MERGES, APPELLANT, *v.* ALTENBRAND ET AL., RESPONDENTS.

(No. 3,100.)

(Submitted March 19, 1912.   Decided April 9, 1912.)

[123 Pac. 21.]

*Corporations—Extension of Corporate Existence—Statutory Requirements—Conditions Precedent—Dissolution—Receivers —Improper Appointment.*

Corporations—Extension of Life—Statutory Authority.

1.   *Held.* that though at the time a corporation was formed the law (Comp. Stats., Fifth Div., sec. 446) made no provision for an extension of its corporate existence, but limited its life to twenty years, and notwithstanding the fact that it never elected to continue its existence under the provisions of the Codes of 1895 or subsequent legislation, it nevertheless could avail itself of the privilege granted in that behalf by section 3826, Revised Codes, as amended by Laws of 1909, page 149.

Same—Expiration of Time Limit—Effect.

2.   Where the law creating a corporation fixes a definite time during which its life shall continue, the corporation is dissolved upon the expiration of such time limit, and can thereafter exercise only such powers as are conferred by law to enable it to wind up its affairs.

Same—Extension of Life—Statutory Requirements—Conditions Precedent.

3.   To bring about an extension of its existence, a corporation must take all the steps prescribed by the statute,—*i. e.:* (1) A meeting of the stockholders with a favorable vote by the requisite majority; (2) the preparation and execution of a certificate evidencing the proceedings had; (3) the filing of the certificate with the clerk and recorder of the proper county, and (4) the filing of a certified copy thereof with the secretary of state,—during its life; any one of these steps taken thereafter is ineffectual.   Hence, where neither the certificate above mentioned nor a certified copy thereof was filed with the proper officers until two days after the twenty-year period of its life had expired, the attempt to extend its existence was abortive.

Same—Expiration of Time Limit—Receiver—Improper Appointment.

4.   Where the complaint in an action by a minority stockholder to have a corporation declared legally dead because of the expiration of the time limit fixed by its charter did not allege that defendant directors were incompetent or improvident, or had been guilty of wrongdoing in connection with the property of the corporation, other than that they were acting upon the erroneous assumption that the corporation was still in existence, which fact, however, did not appear to have resulted in substantial injury to plaintiff, a receiver *held* to have been improperly appointed.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

ACTION by Francis Merges against Henry Altenbrand. Jr., and others.   From a judgment of dismissal, rendered on sus-

taining a general demurrer to the complaint, plaintiff appeals. Reversed and remanded.

*Messrs. Wight & Pew,* for Appellant, submitted a brief; *Mr. Pew* argued the cause orally.

At the expiration of the period named in its charter, a corporation dies absolutely, unless its life has been renewed. (*Home Bldg. Assn.* v. *Bruner,* 134 Ky. 361, 120 S. W. 306.) "If the law under which a corporation is organized, or the special Act creating the corporation, fixes a definite time when its corporate life must end, it is evident that when that date is reached said corporation is *ipso facto* dissolved without any direct action on the part of the state or its members, and no corporate powers can thereafter be exercised by it except such as are given it by the statute for the purpose of winding up its affairs." (*Clark* v. *American C. C. Co.,* 165 Ind. 213, 112 Am. St. Rep. 217, 73 N. E. 1083.)

Since the *Dartmouth College Case* (4 Wheat. (U. S.) 518, 4 L. Ed. 629), in which it was held that a charter of incorporation granted by the state was a contract which could not be amended without the consent of both parties, unless a reservation of the right to alter, amend or repeal laws relating to corporations be contained either in the Constitution or laws under which a corporation is formed, the constitutional conventions and legislatures have usually inserted in the instruments adopted by them a reservation of that right. The provisions of our Constitution (Art. XV, secs. 2, 3) are undoubtedly a result of that decision. Reservations of this character, both constitutionally and statutory, have been the subject of frequent consideration by the courts. While the exact extent to which amendments to corporation laws can be carried under such a reservation is not yet definitely settled, the only extent to which the power of amendment goes is to amendments affecting the contract between the state and the corporation.

It is equally well settled that a reservation such as is contained in our Constitution does not carry with it the right

to interfere with private contracts, so long as such private contracts are not tied to some existing corporate right which can be taken away or altered under the reserved power. Such contracts are fully protected by the provisions of the federal Constitution. This is exactly the kind of a contract which existed between the incorporators and stockholders of the Manhattan Malting Company. One provision of the contract was that the existence of the association should terminate on December 26, 1910. The law in force at that time prohibited the organization of corporations for a greater period than that for which the Manhattan Malting Company was organized and such prohibition became a part of the articles of association. The period during which that corporation should exist was of no interest to the public. It was a matter which interested and affected only the incorporators and stockholders of the Manhattan Malting Company. At the end of that period any stockholder had the right to withdraw and have his *pro rata* share of the corporate property returned to him. (See *Looker* v. *Maynard,* 179 U. S. 46, 45 L. Ed. 79, 21 Sup. Ct. Rep. 21; *Tomlinson* v. *Jessup,* 15 Wall. (U. S.) 454, 21 L. Ed. 204; *Railroad Co.* v. *Maine,* 96 U. S. 499, 24 L. Ed. 836.)

A number of the state courts have had similar questions before them, and have recognized and applied the principle that the reserved right does not authorize the legislature to interfere with the rights of individuals which are separate from the contract between the corporation and the state, either directly or by authorizing a majority of the stockholders to do so. The strongest case upon this proposition which we have found is that of *Garey* v. *St. Joe Mining Co.,* 32 Utah, 497, 12 L. R. A., n. s., 554, 91 Pac. 369. (See, also, *In re Election of Directors, etc.,* 64 N. J. L. 217, 43 Atl. 435; *Lord* v. *Equitable Life Assur. Soc.,* 194 N. Y. 212, 22 L. R. A., n. s., 420, 87 N. E. 443; *Larabee* v. *Dolley,* 175 Fed. 365; *Pronick* v. *Spirits Dist. Co.,* 58 N. J. Eq. 97, 42 Atl. 586; *Marietta etc. R. Co.* v. *Elliott,* 10 Ohio St. 57; *Knoxville* v. *Knoxville O. R. Co.,* 22 Fed. 758; *Intiso* v. *Metropolitan Sav. etc. Assn.,* 68 N. J. L. 588, 53 Atl. 206; Cook on

Corporations, 4th ed., sec. 501; Thompson on Corporations, 2d ed., sec. 406.)

In behalf of Respondents, there was a brief by *Messrs. Hartman & Hartman; Mr. W. S. Hartman* argued the cause orally.

Appellant contends that the power of the legislature under the reserved right is plenary, so long as the legislature, in its existence, does not "interfere with the rights of individuals which are separated from the contract between the corporation and the state, either directly or by authorizing a majority of the stockholders to do so." Assuming that appellant's counsel has correctly stated the rule to be deduced from the authorities, let us examine briefly into what the courts have held that the legislature may do without interfering with the rights of individuals as above defined. The first case, and the controlling one, which we desire to cite is that of *Allen* v. *Ajax Min. Co.,* 30 Mont. 490, 77 Pac. 47. Somewhere between 1889 and 1898 the Ajax Mining Company was originated. At the time of its organization, under the laws of Montana, a majority of the stockholders of a corporation could not dispose of all the property of a prosperous going concern without the consent of the minority. By the Act of February 28, 1899 (known as House Bill No. 132), it was provided that if the proper steps were taken, this could be done upon a concurring vote of two-thirds of the outstanding capital stock, and if the remaining one-third of the stockholders dissented, their stock could be appraised by proper proceedings and they could be compelled to accept the amount of the appraised value thereof, surrender their holdings and get out of the corporation. It was held that the obligation of the contract between Allen, the complaining stockholder, and his fellow-incorporators, and between him and the corporation, was not impaired by the provisions of House Bill No. 132, or the procedure of two-thirds of the stockholders pursuant thereto. While the *Ajax Mining Company Case* is decisive of the question and determines appellant's contention against him, we also cite the following: *Bissell* v. *Heath,* 98 Mich. 472, 57 N. W. 585;

*Sleeper* v. *Goodwin,* 67 Wis. 577, 31 N. W. 335; *Williams* v. *Nall,* 108 Ky. 21, 55 S. W. 707; *McGowan* v. *McDonald,* 111 Cal. 57, 52 Am. St. Rep. 149, 43 Pac. 418; *Market Street Ry. Co.* v. *Hellman,* 109 Cal. 571, 42 Pac. 225; *Railway Co.* v. *Maryland,* 187 U. S. 258, 47 L. Ed. 167, 23 Sup. Ct. Rep. 62; *Spring Valley Waterworks Co.* v. *Schottler,* 110 U. S. 347, 28 L. Ed. 173, 4 Sup. Ct. Rep. 48; *Gardner* v. *Hope Ins. Co.,* 9 R. I. 194, 11 Am. Rep. 238.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought for the purpose of having it adjudged that the Manhattan Malting Company, a corporation organized under the laws of Montana (hereafter referred to as "the corporation"), is legally dead, by reason of the expiration of the time limit fixed by its charter, and to have a receiver appointed to wind up its affairs.

The following narrative of facts, gathered from the complaint, is sufficient to present the questions involved: The corporation was organized on December 26, 1890, the recorded certificate designating the plaintiff, defendants Henry Altenbrand, John G. Gillig, and two others as trustees for the first three months. Its capital stock consists of 10,000 shares of a par value of $100 each. The object of the incorporation named in the certificate is the manufacture and sale of malt at Moreland (now Manhattan), in Gallatin county. At different times there had been issued, and on December 26, 1910, there were outstanding, 5,821 shares of stock. At the time of the organization plaintiff purchased at par 200 shares and is now the owner of them. The defendants are the owners of 4,620 shares, more than two-thirds of all shares now outstanding, and on December 26, 1910, were the acting trustees. On that date a meeting of the stockholders was held pursuant to notice as provided by law for the purpose of determining the question whether the existence of the corporation should be extended twenty years from that date. The result was the adoption of a resolution in favor of the extension,

more than two-thirds of the holders of all the outstanding stock voting in the affirmative, the plaintiff, however, voting in the negative. On December 28, 1910, the chairman and secretary of the meeting caused to be filed with the clerk and recorder of Gallatin county a properly authenticated certificate of the proceedings had, and a certified copy of this certificate to be filed with the secretary of state on December 31. No other meeting was held and no other record of the proceedings made. Subsequently, and prior to the commencement of this action, the plaintiff demanded that the defendants proceed to wind up the affairs of the corporation by the payment of its debts out of the proceeds of its property and the distribution of the remainder among the stockholders. The property of the corporation is of great value. The defendants are in possession of it and are proceeding to use it in the conduct of the business, assuming that the corporation is still in existence. It is alleged that the corporation never elected to continue its existence under the Codes of 1895, nor under the Revised Codes of 1907, nor any other laws than those in force at the date of its organization; that, when it was organized, the term of its existence was limited to twenty years, and there was no provision of law authorizing an extension of it; that the provisions now in force permitting such extension, having been enacted subsequent to the organization of the corporation, have no application to it, but that, if they have, they are void because they impair the obligation of the contract existing between the corporation and the stockholders and between the stockholders themselves, and deprive the plaintiff of his property without due process of law. The court sustained a general demurrer to the complaint and rendered judgment dismissing the action. Plaintiff has appealed.

In order to understand the contentions made by counsel, a brief reference to some of the provisions of our corporation law and their history is necessary. Under the law as it existed in 1890, the life of a corporation was limited to twenty years. (Comp. Stats. 1887, Fifth Div., sec. 446.) There was then no provision authorizing an extension of this limit. By an Act

adopted by the legislature of 1893 (Sess. Laws 1893, p. 111), the provisions of the Compiled Statutes relating to corporations were amended in several particulars. The limitation fixed by section 446, *supra,* was extended from twenty to forty years. Section 467 was amended so as to include a provision authorizing any corporation or company theretofore formed, either by special Act or under the general laws then existing or any formed thereafter, to extend the term of its existence, subject to the provisions and liabilities of the chapter of which section 467 was a part; provided the extension should in no case make the term of existence longer than forty years from the date of the original incorporation. Sections 468 and 469 were so amended as to provide a method by which the extension could be effected. Section 468 declared that it must be authorized by a vote of at least two-thirds of all the shares of stock at a meeting of stockholders to be called as therein directed. Section 469 provided for the organization and conduct of the meeting, and, if the vote was in favor of the extension, for the making and filing of a certificate of the result with the clerk and recorder of the proper county, and a certified copy thereof with the secretary of state. These sections, as amended, were continued in force by section 5186 of the Political Code of 1895 (Rev. Codes, sec. 3566), to be construed as amendments to the provisions on the same subject as found in the Civil Code (Pol. Code 1895, sec. 5184 [Rev. Codes, sec. 3564]), wherein they appear as sections 411–414. Section 446, as further amended (Laws 1905, Chap. 102, p. 224; Laws 1907, Chap. 163), is found in the Revised Codes, as section 3825. Amended sections 467, 468, and 469 now appear therein as sections 3826, 3827, and 3828, respectively. Sections 3825 and 3826 were again amended by the Act of 1909 (Laws 1909, pp. 148, 149), but not in any particular affecting this controversy.

1. We notice, first, the contention that the foregoing provisions
[1]   do not apply to the corporation because it never elected to continue its existence under the provisions of the Codes of 1895 or subsequent legislation, and therefore could not avail itself of the privilege granted by section 3826, *supra,* as amended. This

contention cannot be sustained, for the reason that, when the
Codes of 1895 were adopted, the sections of the Compiled Stat-
utes, *supra,* as amended by the Act of 1893, were in full force
and effect.  By the express terms of amended section 467 (Rev.
Codes, sec. 3826; Sess. Laws 1909, p. 149), it included any com-
pany or corporation theretofore formed "either by special Act
or under general law and now existing."  As already pointed
out, the provisions of the Act of 1893 were continued in force
as amendments to the provisions of the Code of 1895 on the same
subject, and supplanted them so far as they were inconsistent
with them.   (Pol. Code 1895, secs. 5184, 5186; Rev. Codes, secs.
3564, 3566.)   Therefore, after the adoption of the Codes of 1895,
and later of the Revised Codes of 1907, the provisions of the
Act of 1893, and all subsequent amendments to them, still ap-
plied to the corporation, though it did not elect to continue its
existence under the Codes authorizing it to do so.   (Civ. Code
1895, sec. 401; Rev. Codes, secs. 3815, 3816.)   This being so, it
could avail itself of the privilege granted by section 3826 as
amended.

2. Four steps are requisite to enable a corporation to avail
itself of the privilege granted by the statute.   These are: (1) A
meeting of the stockholders, called as provided in section 3827,
and a favorable vote by the requisite majority; (2) the prepara-
tion and execution of the required certificate evidencing the pro-
ceedings had; (3) the filing of the certificate with the clerk and
recorder of the proper county; and (4) the filing of a certified
copy thereof with the secretary of state.   Counsel for plaintiff
contend that all of these steps must be taken during the life of
the corporation, or else the effort to extend its life is not effective
for any purpose.   They rely upon the rule, which is not the
[2]   subject of question, that if the law under which a corpora-
tion is organized, or the special Act creating it, fixes a definite
time during which its life shall continue, when the limit ex-
pires the corporation is *ipso facto* dissolved, and cannot there-
after exercise any power, except such as the law confers in order
to enable it to wind up its affairs.   (*Clark* v. *American Cannel*

*C. Co.,* 165 Ind. 213, 112 Am. St. Rep. 217, 73 N. E. 1033; *People* v. *Anderson etc. R. Co.,* 76 Cal. 190, 18 Pac. 308; *La Grange R. Co.* v. *Rainey,* 7 Cold. (Tenn.) 420; 10 Cyc. 1271; 1 Thompson on Corporations, sec. 243.) Our statute declares that a corporation is dissolved by the expiration of the time limited by its charter. (Rev. Codes, sec. 3905.)

The general rule is that a corporation comes into existence [3] at the time when the conditions precedent imposed by law have all been substantially complied with. (1 Thompson on Corporations, secs. 171, 243, 265.) It is an artificial person, and necessarily can have no legal being until it has been fully created. The conditions necessary to be observed in this state in the formation of industrial and commercial corporations are found in the provisions of the Codes and amendatory legislation. (Rev. Codes, secs. 3808, 3825, amended by Sess. Laws 1909, p. 149, sec. 3817.) Among these are the filing of the articles of incorporation and a certified copy thereof with the proper officers, *viz.,* the county clerk and the secretary of state. When the copy has been filed with the secretary of state, he must issue his certificate to the corporation that it has been filed. "Thereupon the persons signing the articles and their associates and successors, shall be a body politic and corporate." (Section 3825.) While it may be true that the certificate, when issued, will relate back to the date of the execution of the articles so as to validate an act of the incorporators done in the name of the corporation in the meantime, yet, in legal theory until all the required steps, including the issuance of the certificate, have been performed in substantial compliance with the statute, the proposed corporation has no legal existence. The term "thereupon," as used in section 3825, whether taken to signify "in consequence of which," or "immediately after," or "in sequence," clearly imports into it the meaning that all these steps, taken together, are the *causa sine qua non.* The exercise of the privilege to extend the term of existence must be governed by the same rule. The extension is effectuated, not by the favorable vote at the stockholders' meeting, nor by the preparation

of the certificate, nor by the filing of it with the clerk of the county, but by filing the copy with the secretary of state after all the prerequisite steps have been taken; for, under section 3828, the term of existence is extended "when"—that is, "immediately after" or "just after"—the requirements of section 3825 have been complied with. The privilege is statutory and granted upon conditions precedent. It is analogous to a statutory lien, such as that of a mechanic, which is lost unless the claim is filed with the proper officer within the time fixed by law (Rev. Codes, sec. 7292; *Western Iron Works* v. *Montana P. & P. Co.*, 30 Mont. 550, 77 Pac. 413), or to the right to sue for the recovery of taxes paid under protest, which is granted only on condition that action be brought within a specified time. (Rev. Codes, sec. 2743; *Dolenty* v. *Broadwater County, ante,* p. 261, 122 Pac. 919.)

While it is not declared, in terms, in any of the provisions *supra,* that all the steps looking to the extension must be taken during the life of the corporation, all the analogies point to the conclusion that this must be the case. Hence we conclude that the life of the corporation ended at midnight on December 26, 1910, and that what was thereafter done did not effectuate the purpose of the meeting of the stockholders.

It is argued by counsel for defendants that the statute does not require the corporation, or its directors, to file and record the certificate, but that, since this must be done by the clerk or secretary of state, when it is done, it relates back to the date of the passage of the resolution of the stockholders, thus saving the life of the corporation. They insist that this view is supported by the case of *St. Phillips Church* v. *Zion Presbyterian Church,* 23 S. C. 297, and *State ex rel. Cascade Bank* v. *Yoder,* 39 Mont. 203, 103 Pac. 499. Neither of them is in point. Under a statute of South Carolina, the clerk of one of the courts was clothed with the power to grant charters to corporations. Though proper application had been made to him to renew the charter of the Zion Presbyterian Church, which had theretofore been incorporated under the same statute, through neglect on

his part the new charter was not granted until after the old one had expired. The South Carolina court held that the new charter, when granted, related back to the date of application so as to prevent the dissolution of the corporation, and hence a reverter of its property to the original grantor. In the case of *State ex rel. Cascade Bank v. Yoder,* the question was whether, under the circumstances as they were made to appear, it was the duty of the defendant secretary of state to file a certificate extending the life of relator corporation. This court held that it was, it appearing that the authorities of the relator had fully complied with the law on their part. In such cases as these the doctrine of relation should be made to apply; otherwise a careless officer, or one who has a wrong notion of his legal duty, might do an irreparable injury to a citizen who has fully complied with the law, and needs only the ministerial act of the officer to preserve or acquire the right at stake. In the case at bar there is not involved the question of duty by either the clerk or secretary of state.

At the hearing, it was stated by counsel that they had not been able to find any authority directly in point upon the question involved. We have not been able to find any, though we have sought diligently. Nevertheless, we do not think that the soundness of the conclusion we have reached can be successfully questioned. It is sometimes the case that a corporation continues its business after the time fixed by its charter has expired. It has been held, and properly so, we think, that for some purposes such a corporation should be held to have a *de facto* existence. When it is sought to hold it liable for a tort committed by those who have acted as its agents, or upon a contract entered into in its corporate name, the persons acting as its officers ought not to be heard to say that it is not what it purported to be at the time the liability was incurred. The case of *Miller v. Coal Co.,* 31 W. Va. 836, 13 Am. St. Rep. 903, 8 S. E. 600, and the citations therein, are sufficiently illustrative. The principle underlying them, however, has no application to the facts of this case.

Section 3906, Revised Coles, provides: "Unless other persons are appointed by the court, the directors of such corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle the affairs of the corporation, and as such trustees are authorized to execute all grants of real estate owned by such corporation." Upon the facts stated in the complaint, we [4] do not think the plaintiff entitled to have a receiver appointed by the court. It is not alleged that the defendants are incompetent or improvident, or that they have been guilty of wrongdoing in connection with the property of the corporation, other than that they are acting upon the erroneous assumption that the corporation is still in existence. This alone is not sufficient to justify an order taking the property from their possession. Their conduct, though unauthorized, does not appear to have resulted in substantial injury to the plaintiff. In the absence of some definite showing in this regard, they should not be discredited by removal from the position of trustees, conferred upon them by the statute. (*Ferrell* v. *Evans,* 25 Mont. 444, 65 Pac. 714.) Otherwise plaintiff is entitled to the relief he demands; that is, to have the affairs of the corporation adjusted. The court therefore erred in sustaining the demurrer.

The disposition of the two questions so far considered renders it unnecessary to inquire whether the sections of the statute, *supra,* are in any respect repugnant to the provisions of the state or federal Constitution.

The judgment is reversed and the cause is remanded, with directions to the district court to overrule the demurrer.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH not having heard the argument, takes no part in the foregoing decision.