BARNES, APPELLANT, *v.* SMITH ET AL., RESPONDENTS.

(No. 3,315.)

(Submitted November 20, 1913.   Decided December 12, 1913.)

[137 Pac. 541.]

*Corporations—Capital Stock—Ownership in One Person—Effect —Corporate Entity — Estoppel — Directors—Qualifications— Technicalities.*

Corporations—How Dissolved.
     1.   After a corporation has been lawfully organized, it continues to exist until its life expires by limitation, or it has been dissolved by one of the modes prescribed by section 3905, Revised Codes.

Same—Capital Stock—Ownership in One Person—Effect.
     2.   Acquisition of all the capital stock of a corporation by one person does not vest him with legal title to the corporate property, but carries with it only an equitable interest in it.

Same.
     3.   Where one person acquires all the capital stock of a corporation and thereafter conducts the business in the corporate name, those who deal with the corporation may hold it liable for debts incurred in its name.

Same—Directors—Must be *Bona Fide* Stockholders.
     4.   By requiring directors of corporations having capital stock, to be stockholders (Rev. Codes, sec. 3833), the legislature intended that such officers should be *bona fide,* not ostensible, owners of stock.

Same—Ownership of Stock in One Person—Effect.
     5.   When the entire capital stock of a corporation passes into the hands of a single person, its corporate entity, except as to strangers who deal with it as a corporation through its officers and agents, is in abeyance and its functions for the time being cease.

Same—Estoppel.

6. One who, after acquiring all the capital stock of a corporation, makes use of the corporate machinery for his own purposes, even though acting in good faith, is estopped to deny its corporate capacity.

Same—Corporate Entity—Ownership of Stock in One Person—Effect—Case at Bar.

7. Plaintiff, owning all the capital stock of a corporation, induced two directors, who were in reality his agents conducting the business for his sole benefit, to indorse a note of the corporation as guarantors, the proceeds of which were used by it. He later sold the stock, agreeing to deliver to the purchaser the immediate possession of the corporate property, and to save the corporation harmless from any debts, liabilities, *etc.* Having paid the note, he brought suit against the defendants to recover on their contract of guaranty. *Held,* that a nonsuit asked for on the ground that the debt represented by the note was that of plaintiff individually was proper, since, under the circumstances, the corporation was merged in the plaintiff, and its obligations were his own.

Courts—Technicalities.

8. Courts in adjusting rights will look at the substance of the particular transaction, rather than its technical aspects.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

ACTION by John P. Barnes against D. F. Smith and another. From a judgment for defendants, plaintiff appeals. Affirmed.

*Mr. Edward C. Russell,* for Appellant, submitted a brief and argued the cause orally.

Assuming that appellant owned all the stock of the Judith Basin Milling Company, his ownership of the stock does not make him the owner of the assets of the corporation or make him liable as an individual for the debts of the corporation, in the absence of proof that the corporation was formed for the purpose of fraud on the part of the appellant. "The stockholders cannot enter into contracts with third persons. Contracts between the corporation and third persons can be entered into by the directors and not by the stockholders. Such is one of the main objects of corporate existence. Although one person owns a majority of the stock or all of it or all but two shares, he does not consequently acquire the right to act for the corporation or as the corporation, independently of the directors. One person may own all the stock and yet the existence, relations and

business methods of the corporation continues.'' (Cook on Corporations, 4th ed., sec. 709; *Humphreys* v. *McKissock,* 140 U. S. 304, 35 L. Ed. 473, 11 Sup. Ct. Rep. 779; *Newton Mfg. Co.* v. *White,* 42 Ga. 148; *Sharp* v. *Dawes,* 46 L. J. Q. B. 104; *Button* v. *Hoffman,* 61 Wis. 20, 50 Am. Rep. 131, 20 N. W. 667; *Swift* v. *Smith,* 65 Md. 428, 57 Am. Rep. 336, 5 Atl. 534; *England* v. *Dearborn,* 141 Mass. 590, 6 N. E. 837; *Hopkins* v. *Roseclare Lead Co.,* 72 Ill. 373; *Farmers' etc. Trust Co.* v. *Chicago etc. Ry.,* 39 Fed. 143; *Fitzgerald* v. *Missouri Pac. R. Co.,* 45 Fed. 812.) There is no allegation or suggestion by the respondents of fraud on the part of the appellant, in acting through a corporation of which he owned all the stock; so that the law laid down in the above cases governs in this case, and the acts of Mr. Barnes as an individual and the acts of the company, through its board of directors, are entirely distinct and the acts of the latter do not bind the former and *vice versa.*

Appellant maintains that this is a contract of indemnity running to Borgeson, and that only he, or someone claiming under him, can enforce it. That it was so considered by the parties is evidenced by Borgeson's assignment to Warr and McClave, and by the second part of the contract. It includes not only antecedent debts but also unliquidated and contingent liabilities. A contract of indemnity is for the benefit of the indemnitee only or those claiming under him. (22 Cyc. 101, note 28; *Moulton* v. *McLean,* 5 Colo. App. 454, 39 Pac. 78; *Price* v. *Rodman,* 2 Ky. Law Rep. 213; *French* v. *Vix,* 143 N. Y. 90, 37 N. E. 612; *Burke* v. *London Guaranty etc. Co.,* 47 Misc. Rep. 171, 93 N. Y. Supp. 652; *Kayser* v. *Silverberg,* 98 N. Y. Supp. 222; *Northam* v. *Casualty Co.,* 177 Fed. 981; *Atchison & C. Ry. Co.* v. *Lenz,* 35 Ill. App. 330; 22 Cyc. 85, note 29; Page on Contracts, sec. 1316.) It is unusual to find a decision at all-fours with a case at issue, but in the case of *German State Bank* v. *Northwestern Water & Light Co.,* 104 Iowa, 717, 74 N. W. 685, we find a case in which many of the facts so closely resemble those in this action as to make its reasoning and deductions peculiarly valuable. Moreover, the decision in this case is so broad and well

reasoned as to be quoted as a text-book statement: "Thus, persons injured cannot have an action on a promise by a vendor of stock to protect vendee against debts owed by the corporation to third parties." (Page on Contracts, sec. 1316.) This case has been cited and approved in *Chicago R. I. etc. Ry. Co.* v. *City of Ottumwa,* 112 Iowa, 300, 51 L. R. A. 763, 83 N. W. 1079; *Bird* v. *Jacobus,* 113 Iowa, 194, 84 N. W. 1063; see, also, *Union Nat. Bank* v. *Rich,* 106 Mich. 319, 64 N. W. 339; *Wolf* v. *American Tract Soc.,* 164 N. Y. 30, 51 L. R. A. 241, 58 N. E. 31; *French* v. *Vix,* 143 N. Y. 90, 37 N. E. 612; *Messenger* v. *Votaw,* 75 Iowa, 225, 39 N. W. 280; *Collins* v. *Kaw City Mill & E. Co.,* 26 Okl. 641, 110 Pac. 734; *Lorillard* v. *Clyde,* 122 N. Y. 498, 10 L. R. A. 113, 25 N. E. 917; *Peacock* v. *Williams,* 98 N. C. 324, 4 S. E. 550.

An agreement to pay an existing antecedent debt of another may make the promisor liable to the creditor as a principal. (*McCormick* v. *Johnson,* 31 Mont. 266, 78 Pac. 500, and cases cited.) As far as the rights of the creditor are concerned, it puts the promisor in the same position, as regards liability, as the indorser of the note; the payee or holder could sue them collectively or severally. (*Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587; *Brownlee* v. *Young,* 25 Mont. 38, 63 Pac. 798; *Rockfield* v. *First Nat. Bank,* 77 Ohio St. 311, 14 L. R. A. (n. s.) 842, 83 N. E. 392; *Farquhar* v. *Higham,* 16 N. D. 106, 112 N. W. 557.) But as between themselves, he is only liable secondarily as a surety, subsequent to the indorsers before delivery. As such he can proceed against prior indorsers. "A holder who derives his title through a holder in due course and who is not himself a party to any fraud or illegality affecting the instrument has all the rights of such former holder in respect to all parties prior to the latter." (Rev. Codes, sec. 5906; *Craig* v. *Palo Alto Stock Farm,* 16 Idaho, 701, 102 Pac. 393.) A person who places his signature on a note prior to delivery is liable to all subsequent parties. (Rev. Codes, sec. 5912.) Payment of one secondarily liable does not discharge the debt. (Ogden on Negotiable Instruments, sec. 148. Citing *Morgan* v. *Reintzel,* 7 Cranch

(U. S.), 273, 3 L. Ed. 340; *West Boston Sav. Bank* v. *Thompson,*
124 Mass. 506; *Callon* v. *Laurence,* 3 Maule & S. 95.)

*Messrs. Belden & De Kalb,* and *Messrs. H. G. & S. H. McIntire,*
submitted a brief in behalf of Respondents; *Mr. S. H. McIntire*
argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Action by the plaintiff upon a promissory note for $5,000,
payable on demand and executed and delivered by the Judith
Basin Milling Company (hereafter referred to as "the com-
pany") to the Empire Bank & Trust Company, of Lewistown,
Montana, on March 6, 1911, and thereafter assigned to the plain-
tiff. Prior to the execution of the note to the bank, the defend-
ants indorsed it as guarantors, waiving presentment, demand,
protest and notice. The complaint is in the usual form, alleg-
ing demand upon the milling company and the defendants, and
their failure to make payment. The defendants, admitting that
they had indorsed the note and that they have not paid it, deny
generally all the other allegations of the complaint. They then
allege as a special defense substantially the following: That at
the times mentioned in the compaint the plaintiff was the owner
of the entire capital stock of the company; that on March 6,
1911, they were in charge of the business and affairs of the com-
pany, at the request and with the consent of the plaintiff, under
an agreement to purchase from him the capital stock thereof;
that it became necessary for the company to borrow the sum of
money for which the note was executed; that they guaranteed
the payment thereof as accommodation indorsers solely for the
benefit of the company and at its request, receiving no considera-
tion whatever therefor; that the sum received thereon was used
by the company; that the agreement between the plaintiff and
the defendants was not carried out, but that on August 26, 1911,
the plaintiff sold the entire capital stock to one Charles Borge-
son; and that as part of the agreement of sale to Borgeson, and

in consideration therefor in part, the plaintiff assumed and promised to pay the existing debts of the company, including the promissory note which is the subject of this action. The reply contains statutory denials of all these allegations, except that it admits, by not denying, that the plaintiff at the times mentioned was the owner of all the capital stock of the company. The trial was to the court without a jury. At the close of plaintiff's evidence the defendants moved the court to direct a nonsuit, for that no cause of action was disclosed by the evidence: (1) Because it appeared that the plaintiff was the owner of the entire capital stock of the company, and therefore that the debt represented by the note was his individual debt; and (2) because under his contract of sale to Borgeson he agreed to assume and did assume all the debts and liabilities of the company. The court reserved a decision of the motion. After the defendants had introduced their evidence, the court sustained the motion and directed judgment in their favor. Plaintiff has appealed.

The evidence discloses the following: The note was executed to the bank for money borrowed for the use of the company, and was used by it. At that time the defendants were ostensibly directors of the company, and the defendant McCullough was acting as its president. On August 26, 1911, the plaintiff sold the stock to Borgeson, the sale being witnessed by a writing which, after stating that the plaintiff is the owner of all the capital stock of the company and reciting the consideration paid by Borgeson, contains this stipulation: "Now, therefore, in consideration of the premises and of the purchase of said capital stock of the said party of the first part by said party of the second part upon said terms, the said party of the first part, for himself, his heirs, and administrators, does hereby agree to and with the said party of the second part that upon such sale he will turn over to said party of the second part all of the capital stock of the said Judith Basin Milling Company, free and clear of all encumbrances of every kind soever; that he will save the said Judith Basin Milling Company harmless from any debts, suits, judgments, liabilities, or obligations of any kind soever,

save as hereinafter specified, incurred by it or by the said party of the first part, prior to the transfer of said capital stock by the said party of the first part to said party of the second part, including taxes of every kind whatsoever for the year 1911, and said party of the second part shall have immediate possession of all premises.'' Other recitals in the agreement show that the saving clause in this stipulation has no reference to the note due the bank. On August 28 plaintiff paid the bank the amount of the note. It was thereupon indorsed to him without recourse. With reference to this transaction the plaintiff testified on his cross-examination, as follows: ''Q. Mr. Barnes, you say you bought this note that has just been shown you? A. Yes, sir. Q. What was the purpose of your buying that note? A. Well, it was against the milling company, and when I sold the mill I promised Mr. Borgeson, the man I sold to, that I wouldn't allow any encumbrance to come against him or his interest, and I had a reason for buying the note otherwise. I thought probably it was due the bank. I was interested in the bank, and I paid them the money and took the note, with the risk of ever getting it out of Mr. Smith. I see he had indorsed the note as security on it, and he appeared to be pretty energetic, and I thought probably [I] might catch him some time and get the money out of him.''

It does not appear that the plaintiff was at any time a director of the company, nor, if there were others besides the defendants, how many and who they were; but it does appear that at the time the debt to the bank was contracted the plaintiff was the owner of the entire capital stock of the company, and that at the time the sale was made to Borgeson he was in control of all of its property. It also appears by necessary inference that the defendants were not qualified to act as directors, even by nominal ownership of stock. It will be noted, further, that the plaintiff agreed to deliver to Borgeson the immediate possession of the property belonging to the company. It must therefore follow, as a necessary conclusion from the facts thus disclosed and the inferences justified by them, that the defendants, though acting as ostensible directors, were in fact mere

agents of the plaintiff, and were conducting the business of the company for his sole benefit. In brief, the business, whatever its extent, was being conducted in the name of the company, but was, in the ultimate analysis of the situation, the business of plaintiff.

What are the rights of the parties in the premises? Counsel for the plaintiff cites many authorities which announce the rule that the stockholders are not liable for the debts of the corporation and that the courts will not ignore its existence and entity, but will recognize and preserve it, even though the stock is all owned by one person. In most instances there is no doubt that this rule aids the purpose of the legislature in authorizing the creation of corporations, particularly industrial corporations, such as is the company here, *viz.,* to encourage trade and industry by enabling natural persons to make profitable investment by availing themselves of the skill, experience and personal fitness of others, without incurring personal liability for the obligations incurred in the management of the business of the corporation. So, after a corporation has been once lawfully [1] organized, it continues to exist until its life expires by limitation, or it has been dissolved by one of the modes prescribed by the statute. (Rev. Codes, secs. 3825, 3905; *Merges* v. *Altenbrand,* 45 Mont. 355, 123 Pac. 21; *Daily* v. *Marshall,* 47 Mont. 377, 133 Pac. 681.) Its character, as such, cannot be inquired into collaterally at the instance of a private citizen in a controversy between him and it. Its legal capacity can be brought in question by the state only through its proper officer (Rev. Codes, sec. 3892), and for one of the causes prescribed by the statute (Id., sec. 6944). The rule is especially applicable to cases in which creditors are seeking to enforce their claims against the corporation, or to hold the directors liable for their failure to file their annual reports, or the like, when, though one director is the owner of all the capital stock, he has continued the business in the corporate name. The acquisition of all of [2] the capital stock does not vest the owner with title to the corporate property, so as to enable him to maintain an action

in replevin for it. (*Button* v. *Hoffman*, 61 Wis. 20, 50 Am. Rep. 131, 20 N. W. 667.)   The ownership of the stock carries with it only an equitable interest in the property. (*Wilde* v. *Jenkins*, 4 Paige (N. Y.), 481.)   Where one person, owning all [3] the stock, conducts the business in the corporate name, those who deal with the corporation can hold it liable for debts incurred in its name. (*Newton Mfg. Co.* v. *White*, 42 Ga. 148; *Louisville Banking Co.* v. *Eisenman*, 94 Ky. 83, 42 Am. St. Rep. 335, 19 L. R. A. 684, 21 S. W. 531, 1049.)   In *Louisville Gas Co.* v. *Kaufman, Strauss & Co.*, 105 Ky. 131, 48 S. W. 434, the court of appeals of Kentucky held that, though one corporation held all the capital stock of another and was conducting the business of the latter through its own officers and directors, it was not liable for the negligence of the employees of the latter. The text-writers concur in holding that this is the general rule. (Cook on Corporations, 6th ed., sec. 663; Thompson on Corporations, 2d ed., sec. 6498.)   Even so, there are exceptional cases in which the courts refuse to recognize the corporate entity, as distinguished from the stockholders, if the refusal of such recognition is necessary in order to get at the truth.   This statement applies especially to cases in which the corporation is used as a cloak for fraud, or to enable the owner of the stock to evade personal liability or the performance of a public duty.   It has application, also, to cases in which circuity of action would otherwise be necessary to reach an adjustment of the rights of the parties.   It was said by the court of appeals of New York, in *Seymour* v. *Spring F. C. Assn.*, 144 N. Y. 333, 26 L. R. A. 859, 39 N. E. 365: "The abstraction of corporate capacity will never be allowed to bar out and pervert the real and obvious truth." And again, in *Anthony* v. *American Glucose Co.*, 146 N. Y. 407, 41 N. E. 23: "We have of late refused to be always and utterly trammeled by the logic derived from corporate existence, where it only serves to hide or distort the truth."   In this latter case the facts were that the Glucose Company had been formed for the purpose of taking over all the property and business of several other corporations, upon an agreement between the in-

corporators of all of them that payment for the transfer should be made by apportioning to the original stockholders the whole of the stock of the new corporation, except that reserved for use of the treasury. Stockholders of one of the constituent corporations, who had not received their stock, brought an action against the new corporation to compel its delivery to them. The court sustained the action. The extent to which the courts will ignore the corporate entity in order to do concrete justice, when the circumstances require it, is illustrated by the following cases: *Cincinnati Volksblatt Co.* v. *Hoffmeister,* 62 Ohio St. 189, 78 Am. St. Rep. 707, 48 L. R. A. 732, 56 N. E. 1033; *Andres* v. *Morgan,* 62 Ohio St. 236, 78 Am. St. Rep. 712, 56 N. E. 875; *Day* v. *Postal Tel. Co.,* 66 Md. 354, 7 Atl. 608; *Chicago Union Traction Co.* v. *City of Chicago,* 199 Ill. 579, 65 N. E. 470.

Under section 3833 of the Revised Codes, the powers of a corporation must be exercised by a board of not less than three nor more than thirteen directors, to be elected from among the stockholders, or, where there is no capital stock, then from the members of the corporation. "Directors of corporations for profit [4] must be holders of stock therein in an amount to be fixed by the by-laws," *etc.* (Sec. 3833.) Manifestly, the legislature, in making this requirement, intended that the directors should be *bona fide* owners of stock; otherwise, the aggregate body would be such only in name, and it would be possible for a single person, through his own employees and agents acting as his "dummies," to conduct his individual business under the guise of a corporation, with all of the attendant privileges and immunities, and thus escape personal liability altogether. The legislature did not intend this situation to be possible. The result of the requirement is that, when the capital stock passes [5] into the hands of a single person, the entity of the corporation, except so far as it is necessary to protect the rights of strangers, who deal with it through its ostensible officers and agents, is entirely in abeyance, and its functions for the time being cease. So it is held by the current of authority. (*First*

*Nat. Bank of Gadsden* v. *Winchester,* 119 Ala. 168, 72 Am. St. Rep. 904, 24 South. 351; *Louisville Banking Co.* v. *Eisenman, supra; Louisville Gas Co.* v. *Kaufman, Strauss & Co., supra;* Thompson on Corporations, sec. 6498.) Strangers dealing with it while this condition exists cannot know of its internal affairs, [6, 7] and those who have made use of it for their own purposes, though they act in good faith, are estopped to deny its capacity or that they are its officers. (*Daily* v. *Marshall, supra.*) In controversies growing out of dealings of the ostensible officers with the sole owner of the stock, however, though he deals in the name of the corporation, we think the corporate entity should be ignored, and that the contract liabilities of the company to them should be treated as those of the owner of the stock.

If the bank were seeking recovery on the note which is the subject of this suit, we think it should be treated as a stranger to the corporation; but, so far as concerns the rights of the plaintiff and the defendants *inter sese,* the plaintiff should be deemed the corporation itself, and as occupying exactly the relation to the defendants as did the corporation when they indorsed the note. And this is but just, because the company could not have borrowed money without the plaintiff's consent, nor could the defendants have become parties to the contract, except as his agents. The district court was clearly right in looking at the [8] substance of the transaction, rather than its technical aspects, and adjudging the rights of the parties accordingly.

Counsel for the plaintiff has devoted considerable space in his brief to a discussion of the distinction between a contract of indemnity and one of suretyship and guaranty, and insists that, since the indemnity clause in the contract of sale runs to Borgeson only, only he or someone claiming under him can enforce it. The disposition we have already made of the case renders it unnecessary to consider the nature of this feature of the contract. Conceding it to be merely an agreement to indemnify Borgeson, it indemnifies him against a claim which the plaintiff cannot enforce against the company in any event,

because the payment to the bank was the discharge of an indebtedness which, so far as concerns the plaintiff, was his own. The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

Rehearing denied January 7, 1914.