## LOEFFLER et al. v. FEDERAL SUPPLY CO. et al.

No. 29322. April 30, 1940.

Rehearing Denied May 28, 1940.

*102 P. 2d 862.*

Abernathy & Howell, of Oklahoma City, for plaintiffs in error.

Shirk, Paul, Earnheart & Shirk, of Oklahoma City, for defendants in error.

HURST, J. This is an appeal from an order denying the appointment of a receiver for defendant, Federal Supply Company, in an action brought by plaintiffs, F. X. Loeffler and R. L. Patton, as stockholders of that company, for dissolution of the company, appointment of a receiver, and an accounting. The sole question involved on this appeal is whether Federal Supply Company exists as a corporation, or whether it has been dissolved by operation of law.

The facts giving rise to the question are undisputed. Federal Supply Company was incorporated, and certificate of incorporation issued to it as Federal Steam Specialties Company, on April 23, 1918. By subsequent amendment its name was changed to Federal Supply Company. Its corporate life was 20 years. On June 28, 1938, there was filed in the office of the Secretary of State an instrument styled "Amended Articles of Incorporation," signed by the defendants Louis Loeffler, W. E. Price, J. C. Fullerton, and Mrs. Louis Loeffler, as officers and directors of Federal Supply Company, reciting that notwithstanding the expiration of such company's corporate existence on April 23, 1938, it had continued to do business as before, and desired to revive its charter and extend its corporate existence for a period of 20 years from April 23, 1938. It recited that the signers owned and controlled more than 75 per cent. of the stock of such corporation. The Secretary of State duly issued a certificate of incorporation as amended and extended charter. The amended articles were filed without such action being authorized by a duly called meeting of stockholders, and the signers thereof acted without notice to the stockholders. It is undisputed that at all times from and after April 23, 1918, the corporation had been operated as a going concern, and that upon the expiration of its charter on April 23, 1938, the directors took no steps to wind up its business as trustees. The present action was commenced August 12, 1938. Plaintiffs make two contentions, which will be disposed of in order.

1. The first contention is that when the charter of April 23, 1918, expired on April 23, 1938, without any steps being theretofore taken to renew or extend the corporate existence of Federal Supply Company, it was at that time dissolved by operation of law, and could not be renewed or revived thereafter. Plaintiffs assert that this occurred by virtue of the provisions of section 9778, O. S. 1931, 18 O. S. A. § 151, which provides that a corporation is dissolved by the expiration of the time limited in its articles of incorporation, and that thereafter the directors could act only as trustees under section 9788, O. S. 1931, 18 O. S. A. § 163. Reliance is placed upon Merges v. Altenbrand, 45 Mont. 355, 123 P. 21, and other cases holding that steps to extend the corporate existence must be taken during its corporate life, and are ineffective thereafter, and on statements in Fletcher on Corporations, vol. 8, pages 156, 559, to the same effect. Defendants, in answer, point out that the renewal or revival of corporate existence after the time limited by the original charter is expressly authorized by section 9713, section 9714, and section 9790, O. S. 1931, 18 O. S. A. §§ 1, 18, and 165, and that the procedure to be followed is that provided in section 9732, O. S. 1931, as amended S. L. 1935, art. 3, ch. 46, 18 O. S. A. § 17. Section 9713, so far as pertinent, reads as follows:

"Any corporation chartered for a fixed term of years under the laws of this state * * * may renew its charter and extend the time of its existence for a period of not exceeding twenty years at any one time, by filing amended Articles of Incorporation under and as pre-

scribed by" Sec. 9732, O. S. 1931, as amended by art. 3, ch. 46, S. L. 1935, 18 O. S. A. § 17.

Section 9790, O. S. 1931, 18 O. S. A. § 165, reads as follows:

"A corporation once dissolved can be revived only by the same power by which it could be created."

It is apparent that the construction of these statutes is decisive of the case. They have not heretofore been passed upon by this court. The meaning of the words "renew" and "extend," as used in section 9713, and the provision in that section that the procedure prescribed by section 9732, as amended, should be followed, are of controlling importance. While the basic consideration in the construction of a statute is to ascertain and give effect to the intent of the Legislature, it is a settled rule that the words thereof will be given their ordinary meaning unless such construction will defeat the manifest intent of the Legislature. 25 R.C.L. 988; Board of Trustees v. Templeton, 184 Okla. 281, 86 P. 2d 1000; First Nat. Bank v. Mills, 134 Okla. 186, 272 P. 840. Examining the words "renew" and "extend" in view of this rule, and in connection with section 9790, we find that the word "renew," as defined by Webster, means "to make new again," "to begin again," "to repeat," "to restore to existence, to revive, re-establish, re-create." "Extend" means "to stretch, enlarge, draw out, lengthen, or prolong either in space or time, to carry forward." Giving such ordinary or commonly understood meaning to the word "renew," we consider it to authorize the granting of a charter to a corporation making application therefor after the expiration of its previous charter, if the proper method be followed, and the statutory requirements complied with. The distinction between the right to renew and the right to extend is stated in Fletcher's Cyclopedia of Corporation, vol. 8, page 553, as follows:

"There is a broad distinction between the extension of a charter and the grant of a new one. To renew a charter is to revive a charter which has expired, or, in other words, 'to give a new existence to one which has been forfeited, or which has lost its vitality by lapse of time.' To 'extend' a charter is 'to increase the time for the existence of one which would otherwise reach its limit at an earlier period'."

See, also, 7 R.C.L. 101; 13 Am. Jur. 228; 14 C. J. 180. The cases bearing upon the question are based upon the construction of particular statutes. For instance, in Merges v. Altenbrand, supra, cited by plaintiffs, the Montana statute provided that the corporate existence might be extended, but made no provision for renewal or revival, and the court held that, in order to continue its corporate existence, the corporation must take the necessary steps during its corporate life. Conversely, in Rayburn v. Guntersville Realty Co., 228 Ala. 662, 154 So. 812, where the power to renew or extend was given by the statute, the court held that renewal could be effected by action taken after the expiration of the previous charter. In Moers v. City of Reading, 21 Pa. St. 188, 201, the statute considered provided that "no corporate body shall be hereafter created, renewed or extended with banking or discounting privileges, without six months' previous notice of the intended application for the same, in such manner as shall be prescribed by law." In construing this language, the court said:

"To create a charter, is to make one which never existed before. To renew a charter, is to give a new existence to one which has been forfeited, or which has lost its vitality by lapse of time. To extend a charter, is to give one which now exists greater or longer time to operate in than that to which it was originally limited. I do not say that these words have no other meaning in the English language. They are not entirely free from ambiguity. Their signification, like that of other words, must depend much on the context. But the definitions here given are consistent with the sense in which they are used, if not always, at least very often used, both in popular and legal phraseology."

In C. N. Ray Corporation v. Secretary of State, 241 Mich. 457, 217 N. W. 334,

cited by plaintiffs as supporting their contention, the statute provided that the steps to procure the extension of the term must be taken while the term is running. Giving the words "renew" and "extend," as used in section 9713, their ordinary and common significance, we are of the opinion that it was the intention of the Legislature to provide a procedure to effectuate the right to revive given by section 9790, by permitting, in a proper case, the revival or renewal of a corporate charter after the expiration of the term contained in a charter previously issued. This view is strengthened by the fact that the steps taken must be in conformity to the provisions of section 9732, as amended, which indicates that at least to the extent of making such application the directors of the expired corporation were considered to still be clothed with authority to act for the corporation.

2. Plaintiffs next contend that, the renewal or revival of the corporation not having been authorized by the stockholders, the renewal was not effective against their objection. This argument is based upon the rule stated in 14 C. J. 185, 187, that the directors, unless specially authorized, and even a majority of the stockholders, may not amend the corporate charter so as to materially change the nature or objects of the corporation without the unanimous consent of all the stockholders, and that such action by a majority will not bind the dissenting minority. Plaintiffs urge that the renewing of the corporate existence for an additional period of 20 years is such an amendment as requires unanimous consent of the stockholders, and that the renewal without such consent violates the contract between the stockholders contained in the original articles of incorporation. While, as stated by plaintiffs, it is true that the original articles of incorporation did not provide for an extension or renewal thereof, yet, at the time the original articles were executed and filed, section 9732, O. S. 1931, in substance, and section 9790, O. S. 1931, were in force and effect, and the articles, as a contract

between the stockholders, are presumed to have been entered into with knowledge thereof. Oklahoma Cotton Growers Ass'n v. Salyer, 114 Okla. 77, 243 P. 232; Baker v. Tulsa Building & Loan Ass'n, 179 Okla. 432, 66 P. 2d 45. While the statutes governing the dissolution of corporations were in force, the statutes giving the right to revive and the right to amend were also in effect.

In view of the fact that section 9790 provided for a revival, we think that section 9713, fixing a procedure for renewal, or revival, although passed after the original charter was obtained, was not an invasion or deprivation of a vested right of which plaintiffs could complain, especially in view of the power reserved by section 9716, O. S. 1931, 18 O. S. A. § 3, to alter, suspend, or repeal every grant of corporate power in the discretion of the Legislature, which was also in effect when the original charter was obtained. Henley v. Myers, 215 U. S. 373, 30 S. Ct. 148, 54 L. Ed. 240; 72 A.L.R. 1259, note III a. If further restrictions on the right to amend were desired, they should have been provided in the by-laws of the company, in which the power of the directors to act might be limited or restrained as the stockholders desired. The cases supporting plaintiffs' theory seem to be based upon statutes enacted after the incorporation of the company whose rights are affected thereby. Generally, the renewal or extension of the corporate existence does not seem to be regarded as such a material or fundamental change in the purposes of the corporation as to require a unanimous vote of the stockholders. Fletcher's Cyclopedia of Corporations, secs. 4097 and 5788.

In the present case the statement that the signers of the amended articles, by which the corporate existence of Federal Supply Company was renewed or revived, owned and controlled 75 per cent. of the capital stock of that company, is undisputed. This was in excess of the amount required by statute to increase or decrease the capital stock of the company, the only amendment

for which the statute prescribes the consent of more than a majority of the stockholders. In the absence of any showing that the proceeding in the present case was violative of the by-laws or was done for wrongful motives or in pursuance of a scheme to defraud the plaintiffs, we consider the refusal of the trial court to appoint a receiver proper.

Affirmed.

BAYLESS, C. J., and OSBORN, GIBSON, and DAVISON, JJ., concur.