# HANSON SHEEP CO., APPELLANT, *v.* FARMERS & TRADERS' STATE BANK, RESPONDENT.

(No. 3,717.)

(Submitted November 27, 1916.   Decided March 1, 1917.)

[163 Pac. 1151.]

*Corporations — Officers and Directors — Duties and Powers— Estoppel—Fraud—Burden of Proof—Bank Deposit—Pass-book—Pleading and Practice—General Denial—Evidence— Admissibility—Cross-examination—Harmless Error.*

Appeal and Error—Conflict in Evidence—Verdict—Conclusiveness.
   1.   Where the jury finds a verdict on conflicting evidence, the supreme court will on appeal assume that the facts were as claimed by the prevailing party.

Banks—Pass-book—Effect, When Accepted as Correct.
   2.   The balance disclosed by a pass-book when accepted as correct, becomes an account stated between the bank issuing it and the depositor, which, until changed by other dealings between them, fixes the amount due the latter, unless fraud, mistake or error intervened in ascertaining it.

   [As to effect of balances struck in pass-books, see note in 134 Am. St. Rep. 1019.]

Corporations—Officers and Directors—Duties.
   3.   By virtue of their fiduciary relation to the stockholders neither the president nor the directors of a corporation may divert its assets to any use other than such as will serve the purpose of its organization, and hence may not in any event appropriate the assets to their own use.

Same—Officers and Directors—Burden of Proof.
   4.   When it appears that the president or a director of a corporation has been dealing with it, the burden is upon him to show that his dealings have been fair and honest.

Same—Acts of Officers and Directors—Estoppel.
   5.   Where a corporation, with neither board of directors nor secretary, had permitted its president to exercise all its powers and functions for seven years after its organization, he was, so far as the corporation was concerned, possessed of all the powers of the board of directors, and the corporation was estopped to question any of his acts within the scope of its legal powers.

Same—Bank Deposit—Authority to Apply.
   6.   Where the president of a corporation, the stock of which, with the exception of a small portion nominally held by his wife and a brother, was owned by himself, used the corporate name as a cloak under which to conduct his own business, a bank familiar with his manner of conducting the affairs of the ostensible corporation was justified in acting upon his oral direction and applying a deposit made in the corporate name to the payment of notes given it by him to secure private indebtedness.

Same—Fraud—Power of Courts.

7.   The rule that the legal capacity of a corporation cannot be inquired into collaterally by a private person in a controversy between it and him does not preclude courts to examine into the facts of a particular case to determine the identity of a person who uses the name of a corporation for his own purposes, and to fix liability upon him for the ostensible corporate acts.

Pleading and Practice—General Denial—Evidence—Admissibility.

8.   Evidence of any fact which is inconsistent with, and thus negatives, plaintiff's cause of action, is admissible under a general denial.

Same.

9.   Defendant bank was, under its general denial, properly permitted to show that a balance appearing on plaintiff's pass-book had been exhausted by an appropriation made of it by plaintiff through the means of checks which had been paid by his direction.

Appeal—Harmless Error—Cross-examination.

10.   Technical error in permitting cross-examination of plaintiff as to matters about which he had not testified in chief is harmless, and therefore insufficient to work a reversal, where prejudice is not apparent or pointed out.

Corporation—Fraud—Evidence—Admissibility.

11.   In an action of the kind referred to above, evidence elicited from the president of the corporation as to his relations with it, the extent of his interest and control over it, the ownership of shares of capital stock, and all other facts tending to show that it was merely a colorable corporation, was competent.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by the Hanson Sheep Company against the Farmers & Traders' State Bank. From a judgment for defendant and an order denying its motion for new trial, plaintiff appeals. Affirmed.

*Messrs. Loud, Collins, Campbell, Wood & Leavitt,* for Appellant, submitted a brief; *Mr. S. M. Wood* argued the cause orally.

The appropriation by defendant bank of the deposit of plaintiff corporation to the payment of the individual note of A. S. Hanson was a fraudulent appropriation. A deposit belongs to the person in whose name it is entered, and a bank is estopped to question a depositor's right thereto. (*Murphy* v. *Nett,* 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713; *Patterson* v. *Marine Nat. Bank,* 130 Pa. 419, 17 Am. St. Rep. 779, 18 Atl. 632; *Nehawka Bank* v. *Ingersoll,* 2 Neb. Unof. 617, 89 N. W. 618;

*First Nat. Bank* v. *Mason,* 95 Pa. St. 113, 40 Am. Rep. 632; *Lund* v. *Seamen's Bank,* 37 Barb. (N. Y.) 129; 5 Cyc. 517.)

Furthermore, the defendant bank has stated an account with the plaintiff corporation by the act of balancing plaintiff's pass-book upon April 2, 1914, and the bank cannot therefore be heard to say that the balance to the credit of the plaintiff was not due and owing, on April 2, 1914, to it in its corporate capacity. (3 R. C. L., "Banks," par. 161, and cases; *Schoon-over* v. *Osborne,* 108 Iowa, 453, 79 N. W. 263; *Nodine* v. *First Nat. Bank,* 41 Or. 386, 68 Pac. 1109; *Greenhalgh Co.* v. *Farmers' Nat. Bank,* 226 Pa. 184, 134 Am. St. Rep. 1016, 18 Ann. Cas. 330, 75 Atl. 260; 1 Morse on Banks, 3d ed., par. 291.) There is no fraud, error or mistake claimed with respect to this stated account, nor is any such claim set forth in defendant's answer; and therefore it is concluded by the stated account from contending that it is untrue. (*Noyes* v. *Young,* 32 Mont. 226, 79 Pac. 1063.)

Let it be assumed that the direction claimed to have been given to the cashier of defendant bank by A. S. Hanson, president, was in fact given as claimed by the defendant, to-wit, to charge the account with the notes; it still follows that the direction and any appropriation of moneys thereunder was fraudulent and wholly illegal. (*McConnell* v. *Combination Mining & Milling Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; s. c., 31 Mont. 563, 79 Pac. 248; *Kleinschmidt* v. *American Mining Co., Ltd.,* 49 Mont. 7, 139 Pac. 785; *Sims* v. *Petaluma Gaslight Co.,* 131 Cal. 656, 63 Pac. 1011; secs. 5375, 5380, Rev. Codes.) Any such direction, if given by A. S. Hanson, as president, did not bind the corporation. (*El Capitan Land & Cattle Co.* v. *Boston-Kansas C. C. L. Co.,* 65 Kan. 359, 69 Pac. 332; *Leigh* v. *American Brake B. Co.,* 205 Ill. 147, 68 N. E. 713.)

The authority to the bank, if given, was wholly outside the scope of the business of the plaintiff corporation, *ultra vires* and void. (*Central Transp. Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24, 35 L. Ed. 55, 11 Sup. Ct. Rep. 478; *California Nat.*

*Bank* v. *Kennedy*, 167 U. S. 362, 42 L. Ed. 198, 17 Sup. Ct. Rep. 831; *Westerlund* v. *Black Bear Min. Co.*, 203 Fed. 599, 121 C. C. A. 627; *Kellogg-MacKay Co.* v. *Havre Hotel Co.*, 199 Fed. 727, 118 C. C. A. 165; *Metropolitan Stock Exchange* v. *Lyndonville Nat. Bank*, 76 Vt. 303, 57 Atl. 101; *Hillsdale College* v. *Rideout*, 82 Mich. 94, 46 N. W. 373; *Greene* v. *Middlesborough Town & Lands Co.*, 121 Ky. 355, 11 Ann. Cas. 888, 89 S. W. 228; *Best Brewing Co.* v. *Klassen*, 185 Ill. 37, 76 Am. St. Rep. 26, 50 L. R. A. 765, 57 N. E. 20.)

No authority was given defendant bank in writing. (Rev. Codes, sec. 4962.)

The dishonor of the checks made the bank liable to plaintiff for their amount, together with a further sum, reasonable and temperate in amount, as damages for the wrongful act complained of, without allegation or proof of special damage. (*Siminoff* v. *James H. Goodman & Co. Bank*, 18 Cal. App. 5, 121 Pac. 939; *Weller* v. *Western State Bank*, 18 Okl. 478, 90 Pac. 877, 881; *J. M. James Co.* v. *Continental Nat. Bank*, 85 Tenn. 1, 80 Am. St. Rep. 857, 51 L. R. A. 255, 58 S. W. 261; *Schaffner* v. *Ehrman*, 139 Ill. 109, 32 Am. St. Rep. 192, 15 L. R. A. 138, 28 N. E. 917; *American Nat. Bank* v. *Morey*, 113 Ky. 857, 101 Am. St. Rep. 379, 58 L. R. A. 956, 69 S. W. 759; *Patterson* v. *Marine Nat. Bank*, 130 Pa. 419, 17 Am. St. Rep. 779, 18 Atl. 632; *Lorick* v. *Palmetto Bank & Trust Co.*, 74 S. C. 185, 7 Ann. Cas. 818, 54 S. E. 206; *Wood* v. *American Nat. Bank*, 100 Va. 306, 40 S. E. 931; *Atlanta Nat. Bank* v. *Davis*, 96 Ga. 334, 51 Am. St. Rep. 139, 23 S. E. 190; *Baumgarten* v. *Alliance Assur. Co.*, 159 Fed. 275; *Svendsen* v. *State Bank of Duluth*, 64 Minn. 40, 58 Am. St. Rep. 522, 31 L. R. A. 552, 65 N. W. 1086; *Bank of Commerce* v. *Goos*, 39 Neb. 437, 23 L. R. A. 190, 58 N. W. 84; *First Nat. Bank of Tamaqua* v. *Shoemaker*, 117 Pa. 94, 2 Am. St. Rep. 649, 11 Atl. 304; *Robinson* v. *Wiley*, 188 Mass. 533, 74 N. E. 923; *Kleopfer* v. *First Nat. Bank*, 65 Kan. 774, 70 Pac. 880; 5 Cyc. 535.)

Whether the defense be regarded in law as a release, payment or an accord and satisfaction, it is nevertheless settled law

that the defense should have been specially pleaded and was not available to the defendant under its answer. (34 Cyc. 1094; 18 Ency. of Pl. & Pr. 89, 90; 16 Ency. of Pl. & Pr. 174 *et seq.;* 1 R. C. L., "Accord and Satisfaction," par. 40 and cases; 1 Cyc. 341, and cases.)

*Messrs. Nichols & Wilson* and *Mr. M. Brown,* for Respondent, submitted a brief.

In this case we have the following situation:

Albert S. Hanson, as sole official of the company, does some act for the benefit of Hanson individually. Hanson, as stockholder, and in the name of the company, now seeks to avoid the result, it having become apparent that he would gain by repudiating it. He claims that his conduct as president was illegal, because it was *ultra vires* and a violation of a trust relation to himself as beneficiary, and seeks now the aid of a court in his behalf. If there were involved here the interests of innocent stockholders, and complaint was being made by them or in their behalf, an entirely different question would be presented. Here Hanson alone is complaining. Under the record, who was the beneficiary? Hanson alone. Who committed the acts of which complaint is made? Hanson. Who will derive a benefit if the acts are avoided? Hanson. The law will not permit a man to assume such inconsistent positions, and thereby enrich himself at the expense of the party with whom he deals. (*Edwards* v. *Plains L. & W. Co.,* 49 Mont. 535, 143 Pac. 962; *First National Bank* v. *G. V. B. Mining Co.,* 89 Fed. 444.)

Counsel urge that the act of Hanson, even conceding it was authorized, was beyond the scope of its business and *ultra vires.* To this proposition there are three sufficient answers:

(1.) There is no evidence that the act was *ultra vires.* The act is presumed to be within the granted powers, and the burden of proving the act beyond such powers rests on the party making the complaint. (Thompson on Corporations, sec. 2779.)

(2.) Officers who have been guilty of acts which may be *ultra vires* are not permitted to make complaint on that ground.

A stockholder even must show a substantial injury to himself, and he must show that he has not authorized or acquiesced in the acts of which he makes complaint. Hanson, the officer and stockholder, is certainly barred from the privilege of making any such claim as to his own act. (*Id.,* secs. 2846–2849.)

(3.) The doctrine will not be given effect either for or against the corporation when it would defeat the ends of justice. (*Id.,* sec. 2778, and cases.)

It was incumbent on the plaintiff to prove, not only that he had placed money in the bank subject to check, sufficient in amount to meet the various checks, but that he had not withdrawn it at or before the presentation of the checks in question. Evidence that the money had been withdrawn, or the account depleted by either checks drawn against the account by the plaintiff or by someone authorized by it, goes directly to the question that the funds were in fact not in the bank to the credit of the account when the checks were presented. (*Reynolds* v. *Fitzpatrick,* 28 Mont. 170, 175, 72 Pac. 510; *Gallick* v. *Bordeaux,* 31 Mont. 328, 337, 78 Pac. 583; *Hickey* v. *Breen,* 40 Mont. 368, 373, 20 Ann. Cas. 429, 106 Pac. 881.)

If the defendant was claiming or attempting to prove that the particular checks involved in the suit had in fact been paid by it, there might be some force to the contention of the appellant that under the answer the proof could not be made. It is true that some of the Code states do not permit proof of payment under the general issue, except where the indebtedness is declared upon in general terms. This, however, is not true, where an averment of nonpayment in the complaint is regarded as material. Such is the rule in California and some other states. (*Mickle* v. *Heinlen,* 92 Cal. 596, 28 Pac. 784; *State* v. *Peterson,* 142 Mo. 526, 39 S. W. 453, 40 S. W. 1094; *Knapp* v. *Roche,* 94 N. Y. 329, 333.) In the present case it was specifically alleged in the complaint that at the date of drawing the checks in question and upon which they were presented for payment, there were funds sufficient to meet the same to the credit of the plaintiff. The answer denied this averment, and under the issue so

presented the defendant clearly had the right to show that the funds on deposit had been paid out under the direction of the plaintiff for other purposes prior to the presentation of said checks.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff, as a trading corporation whose office and principal place of business is at Billings, in Yellowstone county, through Albert S. Hanson, as its president, and from March 30, 1914, to April 7, inclusive, drew checks upon its deposit account in the defendant bank to the order of various persons to whom it was indebted, and delivered them in payment of amounts due thereon.   On April 8 these several checks were presented for payment, but payment was refused and they were returned to the plaintiff.   On April 11, with the apparent purpose of closing up the account with defendant and transferring it to some other institution, Hanson drew a check payable to "currency" for the whole balance claimed to be due less the amount of checks theretofore drawn, and presented it in person for payment.   The defendant refused to pay this also.   Plaintiff thereupon brought this action to recover the amount of the several checks and for damages, alleging wrongful refusal to pay them. Each check is made the subject of a separate cause of action; plaintiff alleging that when it was drawn and presented there was deposited with defendant, subject to check, an amount more than sufficient to pay it.   Defendant, admitting that all the checks were drawn and presented for payment as alleged, denied that plaintiff had upon deposit, subject to check, a sum sufficient to pay them, or any sum whatever.   A trial to a jury resulted in a verdict and judgment for defendant.   Plaintiff has appealed from the judgment and an order denying its motion for a new trial.

The inquiry at the trial was whether the deposit account had been exhausted before the checks were presented.   Counsel for plaintiff contend that there is no evidence to justify the finding

of the jury in this behalf. The facts disclosed by the evidence are these: The corporation was formed during the year 1907. Hanson transferred to it the business he had theretofore conducted, including all the property theretofore used by him in connection with it. Hanson, his wife, and Trogdon, a hired man, were·its organizers and became the owners of the entire capital stock. They became its directors and officers, Hanson being its president, his wife vice-president, and Trogdon secretary and treasurer. Mrs. Hanson became the owner of one share of stock of the par value of $100, paying therefor $1. In 1912 she became the owner of 100 other shares, paying as a consideration therefor $1 and her help to Hanson. Trogdon purchased one-third of the shares. He gave his note to Hanson for an unpaid balance of the purchase price, who held the certificates as collateral security. Ostensibly the mode of conducting the business was not changed by the organization thus effected, except in the use of the corporate name. Trogdon having failed to pay in full for his shares, and differences having arisen between him and his wife and Hanson, the shares were taken over by Hanson. This was in 1912. From that time until early in March, 1914, Hanson and his wife owned all the shares. At this time a brother of Hanson residing in Oregon acquired shares in the corporation in excess of 100, but the exact amount does not appear. He is referred to by Hanson as a director, but it does not appear when, if ever, he was elected. So far as the record discloses, no meeting of the directors or stockholders was ever had subsequent to the preliminary organization. By-laws were then adopted, but the record of such proceedings as were thereafter had were kept by Hanson in the form of notes and memoranda until this controversy arose. It appears that the brother of Hanson never took any part in the conduct of the business of the corporation and was never present in Montana after he acquired his shares. The corporation became a customer of the defendant in July, 1910, keeping a checking account with it and borrowing funds from it as the exigencies of the business required. Payment of the funds borrowed from

time to time was secured by promissory notes executed in the name of the corporation by ''Albert S. Hanson,'' without official designation, and by him personally as security. A pass-book was kept in the name of the corporation from the time the account was opened until this controversy arose. Hanson kept a separate individual account with the defendant. He also borrowed money from it from time to time, giving his personal notes as security. This course of dealing continued until April 2, 1914. On that date the books of the defendant and the passbook of the plaintiff showed a balance in plaintiff's favor of $14,316.91. This amount had been obtained by the sale of sheep ostensibly belonging to plaintiff, and had been deposited by Hanson on that day. There were then outstanding checks of plaintiff to the amount of $826.60. These had been presented and paid before those involved herein were presented. The balance left was $13,490.31, and was sufficient to pay all of the latter. The plaintiff was then indebted to defendant to the amount of $3,500 upon his promissory note dated February 27, and due on or before August 27 following. Hanson was also indebted to the defendant by promissory note of the same date as that of plaintiff and due at the same time, to the amount of $12,000. These notes were renewals of other notes theretofore given for borrowed money. At the time the deposit of April 2 was made it was agreed between Hanson and the defendant's officers that the amount of the deposit should be applied first to the discharge of plaintiff's note, and then *pro tanto* to that of Hanson. This agreement was made in pursuance of an understanding had on February 27, when the notes were executed, that when a sale of the sheep belonging to the plaintiff, then in contemplation, should be made, the proceeds should be applied to the payment of the notes; the words ''on or before'' having been inserted in order to permit plaintiff to do this. This understanding was the consideration upon which the renewals were made. The deposit was made on Thursday afternoon, April 2. Hanson agreed to come in on the next day and give defendant plaintiff's check for the amount of the balance, but did not come in until

Saturday, April 4, after the close of business for the day. Instead of giving the check, he directed Mr. Price, the cashier, to charge the account with the balance and credit the notes. Sunday and the following Monday being holidays, the instructions then given were carried out on Tuesday, the checks representing the sum of $826.60 having in the meantime been presented and paid as heretofore stated. When the checks in controversy were presented, the account had in this way been exhausted.

There was a conflict in the evidence as to the understanding [1] between Hanson and the officers of defendant when the notes were renewed, as well as to the making of the agreement that the defendant should credit the amount of the balance on the notes when it was deposited. Inasmuch as the jury found the issues for the defendant, we must assume for the purposes of these appeals that the facts were as claimed by defendant. Mr. Mains, the president of the defendant, and Mr. Price, its cashier, testified that they had often talked with Hanson about the business affairs of himself and the corporation, that they had considered Hanson and the corporation as one and the same person, and that they knew that the money borrowed by Hanson on the notes was intended to be used, and was used, by himself, for himself and the business of the corporation indifferently, he having no business other than that carried on in the name of the corporation. Mr. Price testified that Hanson had told him and the other officers of the defendant that the business of the corporation was his. Both said in effect that, since the corporate stock of the defendant was only $50,000 they could not lawfully lend to a single person more than 20 per cent of this amount, and hence that the indebtedness to the defendant was evidenced by the notes executed-as they were, in the names of Hanson and the corporation, to avoid a violation of the prohibition of the statute on the subject. Hanson drew checks upon either his personal account or that of the corporation as it suited his convenience, for money used in the business. There is some evidence which tends to show that the disposition made of the deposit by the officers of the defendant was at the time entirely satisfactory to

Hanson, but that he subsequently changed his mind because he understood or surmised from the conduct of Mr. Mains and Mr. Price that he could not secure further loans of funds for use in trade during the coming summer months. The paid-up capital stock of the corporation was ostensibly $42,000, but the number of shares into which it was divided does not appear, except by inference from the fact that their par value is $100. At the time the present controversy arose it had unencumbered property of the value of $5,000 or $6,000. Aside from his shares of stock and his interest in the proceeds of the sale of sheep by way of dividends, Hanson himself had no property of substantial value. He denied that he had used the money represented by his note in the business of the corporation, but claimed that he had used it in farming operations in different places in Yellowstone county. This statement is not corroborated in any way, and in view of the testimony of Mains and Price as to the purpose for which Hanson borrowed the money, we may assume that the jury rejected his claim as not in accord with the facts. It may be added that he stated that he always consulted the board of directors in regard to the conduct of the business. By this statement he evidently meant that he consulted his wife only, as is apparent from his testimony showing that he and she were the only directors.

Assuming these facts to have been fully established, what are the rights of the parties? Counsel for the plaintiff insist that, though they be accepted at their utmost probative value, they furnish no support for the verdict. They invoke the rule that a deposit belongs to him in whose name it is made, and that by accepting the deposit for plaintiff the defendant could not thereafter pay it to any other person than plaintiff, or apply it for plaintiff's benefit under an express direction. We have no doubt of the propriety of the rule invoked. (*Murphy* v. *Nett*, 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713; Rev. Codes, sec. 5187.) If we assume for the moment that the plaintiff is a *bona fide* corporation with an effective legal entity, the rule **[2]** invoked would doubtless apply. The balance disclosed by

the pass-book when accepted as correct, became an account stated between plaintiff and defendant, as counsel contend, and until changed by other dealings between them with reference to it fixed the amount due the plaintiff unless fraud, mistake or error intervened in ascertaining it. (*Martin* v. *Heinze,* 31 Mont. 68, 77 Pac. 427; *Noyes* v. *Young,* 32 Mont. 226, 79 Pac. 1063.) Plaintiff had the exclusive right at any time through its authorized officers to make such disposition of the balance as it chose.

Of course, the president of a corporation has no authority to [3] appropriate the assets of the corporation to his own use. He and the other members of the board of directors cannot use their position for the purpose of enriching themselves at the expense of the other stockholders. They occupy a fiduciary relation to the stockholders. This imposes upon them the obligation to serve the purpose of their trust with fidelity, and forbids the doing of any act by them, or any one of them, by which the assets of the corporation are diverted to any use other than such [4] as will serve the purpose of its organization. And when it appears that any one of them has been dealing with the corporation, the burden is at once upon him to show that his dealings have been fair and honest. (*Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *McConnell* v. *Combination M. & M. Co.,* 31 Mont. 563, 79 Pac. 248; *Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1; *Kleinschmidt* v. *American Mining Co., Ltd.,* 49 Mont. 7, 139 Pac. 785.)

The stockholders suffer wrong whether the assets are diverted [5] to the use of one or more of the directors or to that of a stranger. Even so, by authority of the board of directors the defendant had the right, with Hanson's consent, to discharge plaintiff's note. He had been intrusted with the exclusive control of its business affairs from the time of its organization. So far as the plaintiff was concerned, he was possessed of the powers of the board of directors, and could lawfully do anything the board itself could do. At the time this indebtedness was incurred Hanson and his wife held all the stock, and, by the continued acquiescence of the latter permitting him to exercise

all the powers and functions of the corporation, he became for the time the board of directors, with all the powers it possessed. The corporation cannot now question any act of his within the scope of its legal powers. (*Edwards* v. *Plains L. & W. Co.*, 49 Mont. 535, 143 Pac. 962.) As the corporation itself by formal action might have taken up its note, though not due, so Hanson's act in doing this must be regarded as that of the corporation, just as if he had been authorized in the most formal manner. (*Id.*) On the other hand, upon the assumption that we have made, Hanson had no power to authorize the application of any part of the deposit to the payment of his debt.

Counsel for the defendant insist, however, that the plaintiff [6] is a mere colorable corporation—a shadow organized and maintained by Hanson as a cloak or *alias* under which to conduct his own business. They earnestly contend that the indebtedness was that of Hanson, and that he had the right to devote the deposit to the payment of it, whether evidenced by his own note or that of the ostensible corporation; in other words, Hanson, having used the corporate name merely as a means to serve his personal convenience, cannot insist that he and plaintiff are distinct persons, that he bears toward it a fiduciary relation, and that he could not lawfully apply its assets to discharge his personal debt. This contention, we think, must be sustained. Whatever view may be taken of the *bona fides* of the organization in the beginning, when Trogdon transferred his shares to Hanson the entity of the corporation fell into a condition of abeyance. It had no board of directors nor any secretary. Therefore it had no agency through which it could legally act. The business theretofore conducted in its name by Hanson was thereafter treated by him as his personal business, or at least that of himself and his wife as copartners. The result was that the name of the corporation, except for the purpose of protecting strangers, became in effect the name of Hanson, and the business, so far as he conducted it in the corporate name, was his. When a corporation is in this condition, the public cannot be expected to know of the fact; hence the rule that,

where strangers deal with it, it can be held for all obligations assumed by its officers in its name.   Its legal capacity cannot [7] be inquired into collaterally or questioned by a private citizen in a controversy between it and him.   This can be done only by the state through its proper officer (Rev. Codes, sec. 3892), and for one of the causes prescribed by the statute (sec. 6944).   But this rule does not preclude an examination into the facts to ascertain the identity of the person who uses the name of the corporation for his own purposes and to fix liability for the ostensible corporate acts upon him.   In the language of the Court of Appeals of New York in *Seymour* v. *Spring F. C. Assn.,* 144 N. Y. 333, 26 L. R. A. 859, 39 N. E. 365: "The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth."

In *Barnes* v. *Smith,* 48 Mont. 309, 137 Pac. 541, this court said: "There are exceptional cases in which the courts refuse to recognize the corporate entity, as distinguished from the stockholders, if the refusal of such recognition is necessary in order to get at the truth.   This statement applies especially to cases in which the corporation is used as a cloak for fraud, or to enable the owner of the stock to evade personal liability or the performance of a public duty.   It has application also to cases in which circuity of action would otherwise be necessary to reach an adjustment of the rights of the parties."   In that case the plaintiff had become the owner of all the capital stock of a corporation, but continued its business through the agency of dummies selected to act according to his directions.   A debt contracted in the name of the company by the dummies for the payment of which they had become sureties during the course of business was held to be in legal effect the debt of the owner of the stock, so that he could not hold his dummies for the amount of it though he had paid it.   This case is not directly in point in its facts, but is authority for the proposition that, whenever it is necessary, the courts will look beneath the particular transaction in order to prevent the perpetration of a

palpable fraud.  If in the one case an ostensible debt of the corporation must be deemed to be the debt of the owner of the stock, by parity of reasoning the ostensible debt of the owner of the stock should be regarded, under proper circumstances, as the debt of the corporation.  Here Hanson used the credit of himself and the corporation to serve his own purposes.  If he is permitted to hide behind the corporate entity to undo what he did in the adjustment of his and its debts, and mulct the defendant in damages besides, he will have been aided in committing a fraud.  True, the defendant violated the statute in lending him the amount of money it did and evidenced as it was by the two notes.  But he was a willing beneficiary, and since he authorized the defendant to appropriate the deposit, which was in fact his, to the payment of the notes, he stands in no position to say that he violated his trust as president of the corporation in doing this.  It is not to the point that Mrs. Hanson's rights were violated.  She was merely the agency by which he attempted to preserve the corporate name.  Nor is it to the point to say that the brother in Oregon suffered a wrong.  In the recapitulation of the evidence above we have assumed as an established fact that he was the owner of shares in excess of 100.  In view of Hanson's vague and indefinite explanation of the transaction by which the brother acquired the shares, whereas he could have disclosed fully the facts in connection with it, the fact that the brother never took any interest in the affairs of the corporation, that it is doubtful whether he gave any consideration for the shares held by him, and that Hanson was permitted to conduct the business as theretofore, it is questionable whether this assumption is justified.  Be this as it may, we think we are fully justified in the conclusion that his position as stockholder was only nominal, the same as that of Mrs. Hanson.  If he in fact became a stockholder, he became such after the debt was contracted and the notes were renewed under the agreement of February 7, 1914, and as an agent of Hanson to serve his purpose.  If he did not in fact become a stockholder, the result is the same.  The evidence as a whole suggests an

effort on the part of Hanson to use the corporate entity to avoid the result of the payment to the defendant, having concluded, upon afterthought, that he would profit by this course.

If the foregoing conclusion is correct, Hanson's authority to Price to apply the deposit as he did amounted to nothing more nor less than a payment of his personal obligation with moneys belonging to him. His verbal direction to the defendant gave it plenary authority to apply the deposit, and the contention by counsel for plaintiff that defendant must have had authority in writing is without merit.

The same may be said of the contention that the court erred [8, 9] in permitting the defendant to introduce evidence showing that the account had been exhausted. The argument is that the contract relation established between the plaintiff and the defendant by virtue of the deposit evidenced by the pass-book could only have been terminated by a release, payment or accord and satisfaction by the plaintiff, and hence that it was incumbent upon the defendant to plead specially the facts showing that the relation had been thus terminated. Under the allegations of the complaint plaintiff was bound to prove that at the time the checks were presented it had a balance sufficient to meet them. Under its denials the defendant was entitled to show that this was not true, and this it could do by showing that the balance appearing on the pass-book had been exhausted by any appropriation made of it by the plaintiff by other checks that had been paid, or otherwise by the direction of the plaintiff. Any evidence is admissible under a general denial which tends to controvert the allegations of the complaint. This includes evidence of any fact which is inconsistent with, and thus negatives, plaintiff's cause of action.

Hanson was the only witness who testified for plaintiff as to the transaction between him and the defendant. On cross-[10, 11] examination counsel for defendant were permitted to question him as to his relations to plaintiff, the extent of his interest in and control over it, the ownership of the shares of its capital stock, and all other facts tending to show that it was

merely a colorable corporation. In fact, it permitted counsel to draw from the witness facts which related wholly to the defense and about which he had not testified in chief. This was error. (*Shandy* v. *McDonald,* 38 Mont. 393, 100 Pac. 203; *Pelican* v. *Mutual Life Ins. Co.,* 44 Mont. 277, 119 Pac. 778.) The evidence was competent, however, and if it had been offered at the proper time and in the regular order, it would have been error to exclude it. The contention now is that the plaintiff should be awarded a new trial solely for the reason that the court permitted a technical violation of the rule of cross-examination. The contention is without merit. It is not pointed out, nor is it apparent, wherein the plaintiff suffered in its substantial rights. The error must be disregarded. (Rev. Codes, sec. 6593.)

Counsel have assigned error upon several rulings of the court in excluding evidence. We have considered the argument made in support of each of them. The rulings were correct.

Though special exceptions were taken to the giving of certain instructions and the refusal to give others, counsel have not argued them in their brief. We therefore do not deem it necessary to notice them.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

Rehearing denied April 3, 1917.