C. E. SHAFFER, Plaintiff and Appellant, v. JAKE BUX-
BAUM and VIOLA BUXBAUM, Husband and Wife, and
PLAINS CONSTRUCTION COMPANY, a Corporation,
Defendants and Respondents.

No. 10090.
Submitted March 28, 1960. Decided April 22, 1960.
Rehearing denied May 27, 1960.
352 Pac. (2d) 83.

Fred N. Dugan, Billings, argued orally, for appellant.
E. W. Popham, Glendive, argued orally, for respondents.

HONORABLE NAT ALLEN, District Judge, sitting in place
of MR. JUSTICE BOTTOMLY, delivered the Opinion of the
Court.

Plaintiff sued to foreclose a mechanic's lien. Defendants
Buxbaum answered alleging fraud between the plaintiff and
defendant Plains Construction Company, who defaulted. De-
fendants Buxbaum counterclaimed for damages. The lower

court found fraud and awarded defendants Buxbaum the relief sought in the counterclaim. Plaintiff appeals. The plaintiff joined the owners (Buxbaums) and the contractor (Plains Construction Company, a corporation) as defendants. The plaintiff was employed by the defendant corporation as a carpenter and was brought from another job in the same employ at Baker, Montana, to assist in the construction after it had been commenced at the Buxbaums' property under the direction of the corporate defendant's secretary-treasurer, E. S. (Buzz) Bryant.

Plaintiff's work was performed under an oral understanding or agreement of employment with E. S. Bryant of Plains Construction Company that he was to be paid wages of $25 per day. The plaintiff proved, and the defendants Buxbaum did not deny, that he performed forty-four days work at $25 per day, or a total of $1,100, complete non-payment thereof and due filing of his mechanic's lien and claim.

The total remodeling work was performed under a written construction contract which was executed on Plains Construction Company form by the defendants Buxbaum, and on the part of the corporate defendant by E. S. Bryant, signed as "salesman". Shaffer's name was not on the contract; he was simply a laborer on the job.

The position asserted by the defendants Buxbaum (who are the only appearing defendants) and the findings of the trial court, finding fraud, puts the plaintiff squarely in the position of the contractor himself in relation to the construction contract herein concerned and charges him with the obligation of the construction contract, and as stated in appellant's brief, "about this fundamental point revolves all the issues of this appeal."

The evidence showed that the articles of incorporation of Plains Construction Company, who defaulted in this case, were dated May 16, 1952, and filed in the office of the County Clerk and Recorder for Yellowstone County, Montana, on May 19, 1952. Incorporators were C. E. Shaffer, plaintiff and appellant

in this action, his wife, and his daughter-in-law, Ruth Bryant, the wife of E. S. (Buzz) Bryant, (the "salesman" on the contract) who, by deduction, was probably a son of Mrs. C. E. Shaffer and foster son of the plaintiff.

On May 4, 1953, C. E. Shaffer and his wife gave their stock, one share each, in said corporation to E. S. Bryant, their son, the "salesman" herein. This was followed by their resignation as directors and acceptance thereof in two letters signed by Ruth Bryant, their daughter-in-law, as President of Plains Construction Company.

Annual corporation reports for Plains Construction Company, signed by E. S. Bryant and Ruth Bryant, his wife, son and daughter-in-law respectively of the Shaffers, for the years 1953 and 1954 were filed, the last one being filed on March 15, 1955, and no annual corporation reports for said corporation were filed thereafter.

The contract between Plains Construction Company and Jake Buxbaum and Viola Buxbaum was dated April 15, 1955; work was commenced on an addition to a dwelling and continued except for certain interruptions until on or about September 21, 1955, at which time the plaintiff stopped work, and there was conflict in the evidence as to whether the contract was completed or whether it was uncompleted. But the lower court found plaintiff "left said building incomplete and in a dangerous condition." The defendants Buxbaum made a down payment of $1,236 required by the contract, which check was made out to Plains Construction Company by Jake Buxbaum and was endorsed by Plains Construction Company, by E. S. Bryant, but was deposited in a bank to the credit of C. E. Shaffer, plaintiff herein, in an account denominated "C. E. Shaffer, Special Account". Plaintiff Shaffer testified that he spent such money for materials on the building, but exactly what he bought with it, or who he bought it from, is not clear in the transcript.

In addition to the down payment, the defendants were required to and did pay for labor, lumber, supplies and materials to other persons threatening to file mechanics' liens on the building in the amount of $3,586.95, and obligated themselves to pay another $215 to complete the building and put the same in a satisfactory condition. The Buxbaums have paid and obligated themselves to pay $5,038.48 for the addition which, according to the contract, should have cost $3,736 as the total price. The trial court found that the plaintiff caused the contract to be made in the name of Plains Construction Company with the intent to cheat, wrong and defraud the defendants Buxbaum, and that the contract was in truth and in fact in the contract of the plaintiff, C. E. Shaffer. The trial court therefore found the mechanic's lien null and void because of fraud and gave judgment to the defendants Buxbaum for damages in the amount of $1,302.48.

As stated by the appellant, the fundamental point in this case revolves around whether the corporate entity be recognized or not. Appellant contends that there was no evidence in the record to show fraud or estoppel, and that the corporate entity should be recognized and upheld.

While, as said in Hanson Sheep Co. v. Farmers' & Traders' State Bank in 53 Mont. 324, 163 P. 1151, 1155, ordinarily a corporation in "Its legal capacity cannot be inquired into collaterally or questioned by a private citizen in a controversy between it and him. This can be done only by the state through its proper officer, * * * and for one of the causes prescribed by the statute (section 6944) [R.C.M.1907, now R.C.M.1947, § 93-6402]. But this rule does not preclude an examination into the facts to ascertain the identity of the person who uses the name of the corporation for his own purposes and to fix liability for the ostensible corporate acts upon him. In the language of the Court of Appeals of New York in Seymour v. Spring F. C. Assn., 144 N.Y. 333, 39 N.E. 365, 26 L.R.A. 859: 'The abstraction of the corporate entity should

never be allowed to bar out and pervert the real and obvious truth.' "

In addition to the above facts, the plaintiff herein was not only the organizer of Plains Construction Company, a family corporation, but when he divested himself of the stock he and his wife *gave,* their one share each, to their son, which left only two stockholders in the corporation, which, as we shall discuss later, put the corporation in abeyance and its functions for the time being ceased. The annual report of the corporation, dated March 1, 1955, just a few months before the contract was entered into, showed that the authorized capital stock of the corporation actually paid in was $300, and that existing debts on that date were $5,948.77. Plaintiff Shaffer in his testimony admitted he knew the corporatoin was "broke". The address of the principal place of business prior to plaintiff giving his stock away was exactly the same address as it was later on at the time this contract was entered into, both addresses being the house where plaintiff lived in Billings. While none of these facts standing alone are illegal or even possibly unusual, yet taken cumulatively with the other evidence in the case we believe justified the trial court's finding of fraud.

As was said in Barnes v. Smith, 48 Mont. 309, 318, 137 P. 541, 543:

"Under Section 3833 of the Revised Codes [1907, now R.C.M. 1947, § 15-401], the powers of a corporation must be exercised by a board of not less than 3 nor more than 13 directors, to be elected from among the stockholders, or, where there is no capital stock, then from the members of the corporation. 'Directors of corporations for profit must be holders of stock therein in an amount to be fixed by the by-laws,' etc. Section 3833. Manifestly, the Legislature, in making this requirement, intended that the directors should be *bona fide* owners of stock; otherwise, the aggregate body would be such only in name, and it would be possible for a single person, through his own employes and agents acting as his 'dummies,' to conduct his in-

dividual business under the guise of a corporation, with all of the attendant privileges and immunities, and thus escape personal liability altogether. The Legislature did not intend this situation to be possible. The result of the requirement is that, when the capital stock passes into the hands of a single person, [or, as in this case, into the hands of two persons] the entity of the corporation, except so far as it is necessary to protect the rights of strangers, who deal with it through its ostensible officers and agents, is entirely in abeyance, and its functions for the time being cease. So it is held by the current of authority. [Citing cases.] Strangers dealing with it while this condition exists cannot know of its internal affairs, and those who have made use of it for their own purposes, though they act in good faith, are estopped to deny its capacity or *that they are its officers."* Emphasis supplied.

In the above case, plaintiff was the former owner of all the shares of stock of the corporation, but had conveyed the same at the time he sued the defendant, and although the facts of the case are not on all fours with the case at bar, we believe the principles therein enunciated apply with equal force in this case.

█ Were we to reverse the district court in this matter, what would prevent plaintiff's son from continuing to grossly underbid on building contracts, take the down payment, let the owner pay for all the materials and then have plaintiff recover for his wages of $25 a day? We think a mere statement of this question makes the answer obvious. This being a case in equity, the plaintiff should come in with clean hands. This he did not do.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR, CASTLES and THE HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, concur.