No. 80-73

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

EVELYN M. FLEMMER , Personal Representative
of the Estate of Jack Flemmer, Deceased,

Plaintiff and Respondent,

-vs-

JOHN J. MING, Individually, JOHN J. MING,INC.,
and INCOME PROPERTIES,INC.,

Defendant and Appellant.

---

Appeal from:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, The Honorable
Robert M. Holter, Judge presiding.

Counsel of Record:

For Appellant:

Murray, Kaufman, Vidal & Gordon, Kalispell, Montana

For Respondent:

Fennessy, Crocker, Harman & Bostock, Libby, Montana

---

Submitted on Briefs:   August 13, 1980

Decided:   DEC 16 1980

Filed: DEC 16 1980

_Thomas J. Kearney_
_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants appeal the judgment of the Lincoln County District Court, entered after a jury verdict for plaintiffs, in the amount of $34,806 in actual and punitive damages and $7,727 in costs and attorney fees with interest to accrue at 10 percent per year until paid. Plaintiffs Evelyn M. Flemmer, individually, and as the personal representative of her late husband, Jack Flemmer, sued the defendants for breach of contract and fraud for the nonpayment of a promissory note. On appeal, defendants allege that the trial court erred in denying their motions to dismiss and for summary judgment and in admitting evidence to vary the terms of the promissory note. Defendants also urge that there is insufficient evidence to support the jury's verdict. We find no error and affirm.

In 1968, the Flemmers listed the Evergreen Motel, which they had owned and operated since 1948, with defendant John J. Ming, a real estate agent in Libby. After attempting for several months to sell the motel, Ming approached the Flemmers about buying it himself. The parties agreed on a purchase price of $110,000. Ming had his attorney draw up a contract for deed and a promissory note for $10,000 which represented the downpayment. The contract listed John J. Ming, Inc., as buyer and the promissory note was signed by John J. Ming as president of John J. Ming, Inc. Before the contract was prepared, Ming had not informed the sellers that he was not buying the property in his individual capacity, but rather that the buyer would be a closely-held, family corporation of which he was the president. Mrs. Flemmer testified at trial the designation "Inc." after Ming's name on the contract had held no special significance

to either her or her husband and that they were lead to believe that Ming would make payments under the contract.

After closing the sale, the Flemmers moved from Montana to Lodi, California, where they intended to retire. In March 1970, Ming wrote to the Flemmers and informed them that the motel was not as profitable as had been anticipated and that he would have to default unless the Flemmers were willing to renegotiate the purchase price and lower the monthly payments. Jack Flemmer was in poor health and did not want to take the motel back. Consequently, the Flemmers agreed to reduce the selling price from $110,000 to $85,000. Ming's attorney drew up the renewal contract and the new agreement was executed on April 1, 1970. When the Flemmers received the new contract in the mail, it showed the buyer to be Income Properties, Inc., and was signed by John J. Ming, as president of that corporation. Ming had at no time disclosed that a different buyer would be named in the contract. Moreover, the 1970 Corporation Annual Report filed by the corporation with the Secretary of State and introduced into evidence at trial by plaintiffs does not show that Ming was a corporate officer at all. The original promissory note with John J. Ming, Inc., became the downpayment for the new contract with Income Properties.

Ming could not pay the promissory note when it became due on November 9, 1973, and therefore asked the Flemmers to accept a new note for $13,127.05, being the original $10,000 downpayment plus accrued interest. The Flemmers assented. The maker was again John J. Ming, Inc. The terms of the renewal note called for monthly interest payments of $87.51 to be made to the Flemmers, with the entire principal balance falling due on February 1, 1975. Ming sent the note to the Flemmers by mail on stationary of Treasure State

Realtors, Inc. The letter was signed by Ming, ostensibly as an agent for Treasure State Realtors, Inc. This letter used--as did all correspondence from Ming to the Flemmers--the plural pronoun "we" when referring to who was liable to make payments under the note.

Only six interest payments were made on the new note, at least two of which were drawn on the checking account of Treasure State Realtors, Inc.

Jack Flemmer died on July 31, 1975. On February 2, 1978, Mrs. Flemmer instituted this action for collection of the balance due on the note. She alleged that Ming had devised a fraudulent scheme to defraud the plaintiffs of the money owed them under the 1973 promissory note. Plaintiffs also contended that the corporate defendants did not have any genuine or separate corporate existence and that they existed for the sole purpose of enabling Ming to transact his personal business in a corporate guise.

We find no merit in the defendants' charge that the trial court erred in ruling on certain procedural and evidentiary questions.

The lower court's denial of defendants' motion for summary judgment was entirely proper. An examination of the pretrial record clearly indicates that the following factual issues were in dispute and could only be resolved by a trial on the merits: (1) whether John J. Ming operated John J. Ming, Inc., Income Properties, Inc., and Treasure State Realtors, Inc., as his personal businesses; (2) whether Ming fraudulently represented to the plaintiffs that he would be liable on the contract and notes; (3) whether Ming acted as an agent for the defendant corporations; and (4) whether the corporate veils should be pierced so as to hold Ming, Treasure State Realtors, and Income Properties liable

on the 1973 renewal note. Summary judgment is proper only where the pretrial record discloses that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Scott v. Robson (1979), ____ Mont. _____, 597 P.2d 1150, 1154; Rule 56(c), M.R.Civ.P.

Neither did the trial court err in denying Income Properties, Inc., Treasure State Realtors, Inc., and John J. Ming's motion to dismiss on grounds that they were not "contractual" parties to the note. These defendants misconstrue the essence of the plaintiffs' action. The Flemmers' lawsuit is based not only on an action at law for breach of contract, but also on a claim in equity for fraud. Plaintiff alleged, in substance, that the defendants acted in concert to perpetrate a fraud. The lower court, ruling on a motion to dismiss, must take the allegations of the complaint as true, Gunderson v. Bd. of Commissioners of Cascade County (1979), _____ Mont. _____, 599 P.2d 359, 361, and must construe them in a light most favorable to the plaintiff. Fraunhofer v. Price (1979), _____ Mont._____, 594 P.2d 324, 327, 36 St.Rep. 883. A complaint will not be dismissed for failure to state a claim unless it appears beyond any doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Fraunhofer, supra, 594 P.2d at 327. Hence, the District Court is not to engage in fact-finding when ruling on a motion to dismiss. See Fraunhofer, supra, 594 P.2d at 327. What evidence was later actually adduced in support of plaintiffs' position is of no consequence when reviewing the appropriateness of the lower court's denial of a motion to dismiss made prior to trial.

Defendants urge that the trial court erred in admitting

-5-

extrinsic evidence, chiefly letters from Ming to the Flemmers, relating to the circumstances leading up to the execution of the 1973 note. They contend that the parol evidence rule prohibits the admission of any and all extrinsic evidence contradicting or varying the terms of the note. There are numerous exceptions to the parol evidence rule. Evidence of the circumstances under which a written instrument was made or to which it relates is admissible to establish fraud. Section 28-2-905(2), MCA. There was therefore no error.

Defendants also fault the trial court for not granting their motion to dismiss plaintiffs' claim of fraud at the close of the plaintiffs' case in chief. We will consider that assignment of error together with the defendants' charge that there was insufficient evidence to support the jury's conclusion that Income Properties, Inc., Treasure State Realtors, Inc., and John J. Ming, Inc., were the alter ego of John J. Ming and had no separate identities of their own.

This Court has recognized two general theories under which the corporate identity may be disregarded: the so-called "agency" theory and the "identity" or "alter ego" theory. State ex rel. Monarch Fire Ins. Co. v. Holmes (1942), 113 Mont. 303, 307-08, 124 P.2d 994, 996. The court's instruction to the jury accorded with these recognized theories:

> ". . . a corporation's separate identity may be disregarded when such corporation is under the control of another corporation or individual, and acted as that corporation's agent as to the particular transaction, or, when the corporation's identity is so identified with the other corporation or individual sought to be held liable as to make the two corporations one. Before you can disregard the separate identity of the corporation, however, you must also find. . . that the corporation is utilized as a subter-

fuge to defeat public convenience, to justify
wrong, or to perpetrate fraud."

Where the corporate form is abused by an individual
controlling shareholder in order to defraud creditors,
equity may pierce the corporate veil. See, Stromberg v.
Seaton Ranch Co. (1972), 160 Mont. 293, 502 P.2d 41; Shaffer
v. Buxbaum (1960), 137 Mont. 397, 352 P.2d 83.

The evidence supports a finding of fraud and justifies
piercing the corporate veil. The record shows that all
three of the corporate defendants were closely-held, family
corporations. The officers, stockholders and members of the
boards of directors consisted in each case of the same
people: Ming, his wife, his son, and his daughter. The
registered offices of all three corporations were located in
Ming's personal residence. All three corporations were
engaged in the same enterprise -- the purchase, sale and
development of real estate. These facts, if they stood
alone would not, of course, warrant abrogating a
corporation's limited liability. However, the use to which
the corporations were put does. In particular, when Ming
asked to renegotiate the original contract, he never
mentioned to the Flemmers that the renewal contract would be
with Income Properties, Inc., or that the Flemmmers would be
required to retain the original promissory note with John J.
Ming, Inc., as the downpayment for the new contract. Ming
regularly corresponded with the Flemmers under different
business names. In those letters, he habitually used the
word "we" when referring to the parties who were to make
payment under the note. He made interest payments on the
renewal note with checks drawn on different corporate
accounts (Treasure State Realtors, Inc., and John J. Ming,
Inc.). Under the circumstances, it was entirely reasonable
for the Flemmers to conclude that the various corporations

-7-

were all a part of Ming's personal business empire.

In 1970, when the second contract for deed was executed, Income Properties, Inc., replaced John J. Ming, Inc., as the purchaser, Ming testified that no consideration was paid for that transfer. It is highly unlikely that one corporation would transfer income-producing property to another corporation gratis unless their interests were really the same. Ming, admitted on the stand, the unity of interest which he had with Income Property, Inc.:

> "Q. It is not really good business sense, is it, to sell property and still stay liable for ten or twelve thousand ($10,000.00 or $12,000.00) of the obligation? A. I was liable on the note whether I gave the motel back to the Flemmers or not; whether John J. Ming, Incorporated was."

Ming also admitted on the stand that at the time the renewal note was mailed to the Flemmers, John J. Ming, Inc. was financially incapable of paying off the note.

The evidence showed that when Ming originally negotiated with the Flemmers to purchase their motel in 1968, he had been engaged as their real estate agent. The law imposes an affirmative duty upon a real estate agent not only to refrain from taking advantage of his client, but also to act with the utmost good faith, and to fully disclose all material facts concerning a transaction that might affect the client's decision. Lyle v. Moore (1979), _____ Mont. _____, 599 P.2d 336. Ming did not advise the Flemmers that Treasure State Realtors, Inc. was separate from John J. Ming, Inc., or that any of these were separate from John J. Ming, himself. Nor did he reveal, at the time of executing the second note, that the corporate maker, John J. Ming, Inc., could not pay it off.

Under the circumstances, we cannot say that the trial court abused its discretion by denying the defendants'

motion to dismiss plaintiffs' claim of fraud at the close of the plaintiffs' case in chief. Clearly, substantial evidence was introduced at trial to justify the jury's decision to pierce the corporate veil.

Defendants next contend that the evidence fails to support an award of exemplary damages. There is no merit to this claim. Since there is substantial evidence of fraud, the jury was clearly within its province in awarding punitive damages. Section 27-1-221, MCA.

Plaintiff requests this Court to allow her attorney fees for costs incurred resulting from the defendants' post-trial motions and appeal under our holding in Erdman v. C & C Sales, Inc. (1978), _____ Mont. _____, 577 P.2d 55, 59. We decline to do so. The award of reasonable post-trial attorney fees in Erdman was grounded upon section 39-3-214, MCA (formerly section 41-1306, R.C.M. 1947), a statute that is inapplicable to the present case.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-