No. 81-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

TIMOTHY LITTLE and SHARON LITTLE,

Plaintiff and Respondent,

vs.

GRIZZLY MANUFACTURING, FRED J.
BERNATZ, BOLIVER REALTY and
DON CROSLEY,

Defendant and Appellant.

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellant:

Schultz Law Firm, Hamilton, Montana
Jeffrey H. Langton argued, Hamilton, Montana

For Respondent:

John L. Hamner argued, Butte, Montana

Submitted: October 26, 1981

Decided: NOV 2 5 1981

Filed: NOV 2 5 1981

Thomas J. Kearney
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The Littles brought this action in the District Court, Silver Bow County, to recover damages for the alleged negligence, breach of contract and breach of general warranties (sections 30-11-214 to 30-11-216, MCA), arising from the sale of a modular home by Grizzly Manufacturing to the Littles. The jury returned a verdict for the plaintiffs in the amount of $9,000. A crossclaim involving Don Crosley of Bolever Realty was also tried, but there is no appeal from this portion of the case.

In August, 1977, the Littles entered into a purchase order for a home manufactured by Grizzly Manufacturing of Hamilton, Montana. The Littles had visited the manufacturing plant and participated in the design of the home. The house purchased by the Littles was a modular house which was constructed at the plant in two sections and shipped to the Littles' homesite in Butte, Montana. According to specifications furnished by Grizzly, the Littles constructed a foundation for the house which was approved by Grizzly representatives.

In November, 1977, Grizzly employees delivered the house to the site and the two halves were placed on the Littles' foundation, one section at a time. Timothy Little testified that two steel rails were laid across the foundation to support the sections as they were pulled across the foundation. The installers experienced difficulty with the first section due to the weight of a stone fireplace which had been built into the section at the factory. As this section was pulled across it bowed because there was no support in the middle. Only two rails were used to roll the house across. Grizzly employees told Tim Little that three rails should have been used due to the fireplace, and that the fireplace should have been installed after delivery. Once the house was on the foundation it was "stitched" together and support beams were set up in the basement.

On her first inspection of the home, Mrs. Little saw that

the fireplace was about four inches from the ceiling and there were cracks in the wall. There were also defects in the linoleum, the countertops, the windows and the patio door. Apparently most of these defects were fixed after Mrs. Little complained to Fred Bernatz, president of Grizzly. Grizzly employees jacked up the house so that the fireplace met the ceiling. There were several defects which had not been cured at time of trial. The roof leaked, the fireplace mantel was warped, and there was a noticeable variation in height between the two halves of the house. The linen closet door was four inches short of the floor and the kitchen closet was defective and unfinished. Grizzly employees attempted to fix the leaking roof and the variation in the floor but the repairs were unsuccessful.

The purchase price of the home was $38,001. At time of trial the Littles had paid all but $397.24 of the purchase price and had lived in the home for almost three years. The Littles admitted removing two of the support posts in the basement in order to build a basement wall. Tim Little stated he informed a Grizzly representative of his plans to build the wall. Bernatz testified he did not authorize the removal of the support posts.

Testimony on damages was given by Robert Alden, the father of Sharon Little. Mr. Alden was a certified real estate appraiser. He testified that the value of the home with its defects was $5,000 lower than it would be without the defects in 1979, and that the discrepancy in values would be greater at present due to inflation. He further testified over objection that the hump in the floor could be repaired for $2,000, and the mantelpiece replaced by a carpenter and perf-a-taper working at approximately $100 per day for one week. Fred Bernatz testified that the mantel could be replaced for a couple hundred dollars. Mr. Alden testified the roof would have to be removed and replaced, but he gave no estimate of the cost. There was no further evidence on damages. The jury rendered a verdict in

favor of the Littles for $9,000.

Appellants Fred Bernatz and Grizzly Manufacturing, Inc., raise the following issues:

1) Whether the District Court erred in denying Fred Bernatz's motion that he be dismissed as a party defendant because he was merely an agent for the corporation and therefore not personally liable;

2) Whether the District Court erred in refusing defendants' offered instructions based upon the Montana Uniform Commercial Code;

3) Whether the District Court erred in giving an instruction on the doctrine of res ipsa loquitur;

4) Whether there was sufficient evidence to support the damages awarded by the jury;

5) Whether the jury was properly allowed to consider the effects of inflation in assessing damages;

6) Whether a real estate appraiser was qualified to testify as to cost of curing the defects in the home.

On the basis of numerous errors committed by the trial court, we reverse and remand for a new trial.

I. Liability of Corporate Agent.

Judgment was entered against Fred Bernatz, individually, and Grizzly Manufacturing, Inc. Appellants contend that Bernatz, who was president of Grizzly Manufacturing, should have been dismissed as a party.

The liability of an agent to a party dealing with the principal or corporation is covered by section 28-10-702, MCA, as follows:

> "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency in any of the following cases and in no other:
>
> "1) When, with his consent, credit is given to him personally in a transaction;
>
> "2) when he enters into a written contract in the name of his principal without believing in good faith that he has authority to do so; or

- 4 -

"3) when his acts are wrongful in their nature."

There was no evidence that Fred Bernatz received personal credit or acted without authority or acted outside the scope of his agency. In order for Bernatz to be personally liable, therefore, there must be evidence to support a finding that he was personally negligent or that his actions or omissions were tortious in nature.

Mr. Bernatz was not present when the modular home was installed on the Littles' foundation. He testified, "There could have been bad handling or something in the process of the transfer from the trailer to the foundation, but nothing I am aware of or was reported by our people." He stated that he had been through the home with the Littles when it was being constructed at the plant. Mrs. Little called him on several occasions with complaints, and a Grizzly representative would make a service call. Bernatz personally did not know of any case where the company failed to respond to a complaint. There was no evidence that he was aware of any negligent construction, or that he participated in the actual construction process.

Application of the doctrine of "piercing the corporate veil" to avoid fraud or injustice is inappropriate here. In Montana, officers of a corporation have been held personally liable where it was shown that the corporation was merely an "alter ego" for a person using a shield for purposes of fraud. See Shaffer v. Buxbaum (1960), 137 Mont. 397, 352 P.2d 83; Wilson v. Milner Hotels, Inc. (1944), 116 Mont. 424, 154 P.2d 265. There is no evidence that the corporation was defectively formed or that it was formed with the intent to avoid personal liability. As a matter of public policy, the officers and agents of a corporation must be shielded from personal liability for acts taken on behalf of the corporation in furtherance of corporate goals, policies and business interests. Phillips v. Montana Ed. Ass'n (1980), ____Mont.____, 610 P.2d 154, 37 St.Rep.

821. The exception to this policy is where the officer personally committed a tort. There is no evidence to support a finding that Bernatz committed a tort. Therefore, the motion to dismiss him as a party defendant should have been granted.

II. Applicability of Uniform Commercial Code.

The trial court, over appellants' objections, gave three jury instructions based on the general statutory warranties of sections 30-11-214, 30-11-215, and 30-11-216, MCA. Appellants argued that these instructions were inapplicable on the ground that the Uniform Commercial Code applied to the transaction and precluded the use of the general statutory warranties. Appellants contend the trial court erred in refusing their proposed instructions based on the U.C.C., sections 30-2-606, 30-2-607, 30-2-717, 30-2-714(2), 30-2-605 and 30-2-314, MCA. We agree.

Article 2 of the Uniform Commercial Code applies to sales of "goods." "Goods" is defined in section 30-2-105, MCA, as follows:

> "(1) 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action . . .

> "(2) Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods. A purported present sale of future goods or of any interest therein operates as a contract to sell."

The question of whether a sale of a modular home is governed by the U.C.C. has been decided by only two courts. The Indiana Court of Appeals held that the sale of a modular home was a sale of "goods" and therefore governed by the U.C.C. Stephenson v. Frazier (Ind.Ct.App., 1980), 399 N.E.2d 794. In Cates v. Morgan Portable Building Corp., (7th Cir. 1979), 591 F.2d 17, the court approved of the lower court's conclusion that two prefabricated modular hotel units were "goods" under U.C.C. § 2-105.

The respondents have argued that Grizzly Manufacturing had charge of the home until after it was permanently affixed to the foundation, at which point it no longer had mobility. However, the time of identification to the contract is not dependent upon control of the goods by either party or upon delivery. According to Anderson, Uniform Commercial Code § 2-501:4:

> "In the case of the manufacture of goods to the buyer's specifications, the fact that the goods are to the buyer's specifications is a sufficient identification of the goods to the contract. Consequently there is an identification of the goods from the moment when the first step of production is made with the raw materials which are intended to be finally worked into the goods required by the buyer's contract."

The evidence shows that the modular home was manufactured to the Littles' specifications with regard to design and decoration. Thus the time of identification to the contract was the time of the first step in production. At that time the modular home was movable. The Uniform Commercial Code therefore governs this case and the general statutory warranties of sections 30-11-201 et seq., MCA are inapplicable by virtue of section 30-11-224, MCA.

III. Res Ipsa Loquitur Instruction.

Appellants contend the jury instruction on the doctrine of res ipsa loquitur should not have been given by the trial court. They object on the basis that the defect in the floor could have been caused by the Littles' structural remodeling and that the Littles had exclusive control of the house before the leak in the roof developed.

The doctrine of res ipsa loquitur is stated in Whitney v. Northwest Greyhound Lines (1952), 125 Mont. 528, 533, 242 P.2d 257, follows:

> "[W]hen an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, then the law infers negligence on the part of

- 7 -

the one in control as the cause of the injury."
All of the elements must be found to exist before the inference of negligence may be drawn. Where, as here, there is a factual question as to whether the elements of res ipsa loquitur exist, the instruction must be stated in conditional terms rather than mandatory terms.

The instruction given was taken directly from the Montana Jury Instruction Guide, Jury Instruction No. 22.00. It is made conditional on the finding by the jury that all of the elements of res ipsa loquitur exist. Therefore the instruction as given was proper.

IV. Damages.

The case was submitted to the jury on two theories: 1) negligence and 2) breach of general statutory warranties. The jury was instructed on the measure of damages for negligence, section 27-1-317, MCA, but they were not instructed as to the measure of damages for breach of general warranty. Further, we have decided that the U.C.C. should have been applied, thereby precluding the general statutory warranties instructions. There is no way to determine whether the jury relied on negligence or breach of warranty in reaching its verdict of $9,000 in favor of the respondents. We cannot be certain that the jury did not rely on an improper theory in assessing the damages.

Even assuming arguendo that the jury relied on the negligence theory, the award of damages was not supported by sufficient evidence. Mr. Alden, certified real estate appraiser, testified the value of the home with its defects was $5,000 less than it would have been without defects in 1979, and that the market value of the home had increased by date of trial due to inflation. He testified that as the value of the home goes up, the discrepancy in value due to the defect also increases. No percentage rate of inflation was given to the jury.

Mr. Alden's estimates on the cost to cure the defects totalled approximately $3,000. Appellants argue that Mr. Alden

was not qualified to testify as to the cost of cure. He testified that he had at one time worked as a manager of the remodeling department of a lumber company. The trial court has broad discretion in determining whether a witness may qualify as an expert. Mets v. Granrud (1980), ___ Mont. ___, 606 P.2d 1384, 37 St.Rep. 313; Haynes v. County of Missoula (1973), 163 Mont. 270, 517 P.2d 370. See also 11 Moore's Federal Practice § 702.10[3]. The degree of a witness' qualification affects the weight rather than the admissibility of his testimony. Nesbitt v. City of Butte (1945), 118 Mont. 84, 163 P.2d 251. The trial court did not abuse its discretion in allowing Mr. Alden to testify.

However, the jury must have considered the effects of inflation in order to reach the amount of $9,000. They did so in the absence of specific guidelines derived from the evidence. We conclude that in this case there was insufficient evidence on which the jury could have considered inflation.

Reversed and remanded for a new trial to be limited to two bases of liability: negligence and breach of obligation under the Uniform Commercial Code.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 9 -